## PEOPLE v WACLAWSKI

Docket No. 287146. Submitted November 10, 2009, at Detroit. Decided
December 29, 2009, at 9:30 a.m.

Steven M. Waclawski was convicted by a jury in the Macomb Circuit
Court, Mary A. Chrzanowski, J., of one count of first-degree
criminal sexual conduct, two counts of second-degree criminal
sexual conduct, five counts of using a computer to produce child
sexually abusive material, and one count of producing child
sexually abusive material and was sentenced to concurrent sen-
tences for the convictions. The charges resulted from a search of
defendant's computers that revealed pornographic images depict-
ing underage boys and defendant. Defendant had originally been
arrested in Illinois when he traveled there from Michigan to meet
with a person that he thought was a 14-year-old boy. Defendant
had met the person through Internet chat room communications
(electronic messages) and had arranged to meet him for sex. The
person was in fact a police detective and when defendant arrived at
the assigned location he was arrested. When arrested, defendant
admitted possessing child pornography on his computer. Defen-
dant pleaded guilty in Illinois to one count of indecent solicitation
of a child and was sentenced to two years' imprisonment. While he
was imprisoned, police officers in Michigan obtained search war-
rants and searched defendant's home and office computers and
discovered the photographs at issue. Defendant was returned to
Michigan to face the charges pertaining to the photographs under
the provisions of the Interstate Agreement on Detainers (IAD),
MCL 780.601. During defendant's trial, the trial court granted
defendant's motion to exclude all other acts evidence of defen-
dant's Internet chats with alleged minors in Ohio and Illinois (the
minors were actually police officers). The prosecution sought leave
to appeal and moved for a stay of the circuit court proceedings. The
Court of Appeals granted the application for leave to appeal and
the motion for a stay in an unpublished order, entered February
14, 2007 (Docket No. 276094). The Court of Appeals issued an
unpublished opinion per curiam on October 11, 2007, reversing
the order excluding the other acts evidence and remanding the
case to the circuit court for trial. On remand, the trial court ruled

that the other acts evidence was admissible and the jury eventually entered its guilty verdicts. Defendant appealed.

The Court of Appeals *held*:

1. The provisions of article IV of the IAD were triggered by the prosecution's completion and submission of a standard Form V of the IAD "Request for Temporary Custody" in order to bring defendant back to Michigan from Illinois. Defendant had the right under Article IV to be brought to trial within 120 days of his arrival in Michigan. The 120-day time limit may be tolled for any period that is the result of any necessary or reasonable continuance for good cause shown in open court with the defendant or the defendant's counsel present. Such a continuance includes any period of delay caused by the defendant's request or ordered to accommodate the defendant. A total of 574 days passed between the time defendant was returned to Michigan and his trial date. The facts show that the prosecution was responsible for only 100 days and defendant was responsible for 235 days. The trial court did not err in holding that the remaining 239-day delay caused by the appeal to the Court of Appeals should not count toward the running of the 120-day deadline set by the IAD. The order of the Court of Appeals granting the application for leave to appeal the motion excluding the other acts evidence is not deemed outside the scope of IAD Article IV(a) and (c) merely because it was issued without the physical presence of defendant or his counsel.

2. Although the 24-month delay was presumptively prejudicial and defendant asserted his right to a speedy trial, the reasons for the delay weigh against defendant and his ability to prepare a defense was not prejudiced. The trial court properly determined that defendant's right to a speedy trial was not violated.

3. The other acts evidence regarding defendant's online chats demonstrated intent and identity as well as common scheme, plan, or system and it was relevant and more probative than prejudicial. The trial court provided a comprehensive limiting instruction that the evidence could only be considered for very limited purposes. The trial court did not abuse its discretion by admitting the other acts evidence.

4. The Court of Appeals incorrectly held in *People v Reid*, 233 Mich App 457 (1999), that fellatio for purposes of MCL 750.520b(1)(a) requires the entry of a penis into another person's mouth, rather than any oral contact with the male genitals. A dictionary defines fellatio as the oral stimulation of the penis. The act depicted in one of the photographs showing an image of what is alleged to be defendant's face perpendicular to the victim's penis with his tongue out of his mouth in contact with the victim's penis

would constitute fellatio pursuant to the dictionary definition. Two of the photographs depicted defendant with his mouth open and the victim's penis inside defendant's mouth and clearly depict fellatio as interpreted by *Reid*. The trial court's jury instructions made it clear that the prosecution was required to demonstrate entry into defendant's mouth by the victim's penis and, as a result, fairly presented the issues to be tried and sufficiently protected defendant's rights. The trial court did not err by instructing the jury with regard to the charge of first-degree criminal sexual conduct.

5. Defendant did not show that error occurred with regard to the trial court's instructions regarding defendant's right to a unanimous verdict.

6. The trial court reasonably concluded that the victims suffered serious psychological injury as a result of defendant's abuse and properly scored defendant at 10 points for offense variable 4, MCL 777.34.

7. The trial court properly scored defendant 10 points for offense variable 9, MCL 777.39, because the record supports the inference that at least two other victims were placed in danger of physical injury when the sentencing offenses were committed.

8. The trial court properly determined that the evidence showed that defendant engaged in predatory conduct. The trial court properly scored offense variable 10, MCL 777.40, at 15 points.

9. There was ample evidence to support the trial court's decision to score 25 points for offense variable 12, MCL 777.42.

10. Defendant was not entitled to jail credit in Michigan for the time he served in an Illinois jail for his conviction in Illinois before he was returned to Michigan under the IAD.

11. The trial court did not abuse its discretion by concluding that the presentence investigation report was accurate with regard to the probation agent's reference to defendant's being uncooperative and refusing to answer questions.

12. The decision to allow the mothers of the victims to give victim impact statements was within the trial court's discretion. The trial court did not abuse its discretion by allowing references to the mothers' statements in the presentence investigation report.

13. There is no evidence that the police or the prosecutor engaged in an unlawful overbroad search of defendant's computer materials. To the extent that defendant, a former attorney and prosecutor, sought to claim an attorney-client privilege with re-

gard to material contained on the computers, the privilege is personal to defendant's clients and is not one that defendant could assert. Defendant failed to show that the search of the computers was improper or that the evidence seized should be suppressed.

14. There is no merit to defendant's claims that the March 20, 2006, search warrant was obtained with impermissible police hearsay, with an invalid, unsigned affidavit, and without a proper showing of probable cause. There was a substantial basis for the finding of probable cause to issue the search warrant. Defendant failed to show by a preponderance of the evidence that the affiant knowingly and intentionally, or with reckless disregard for the truth, inserted false material into the affidavit supporting the search warrant and that false material was necessary to the finding of probable cause. Defendant failed to establish error with regard to the affidavit or the search warrant.

15. The search warrant pertaining to defendant's digital camera plainly indicated that the camera was located in Illinois and was presumably there as a result of defendant's Illinois arrest, conviction, and incarceration. There is no substance to defendant's argument that the camera was obtained by the government in violation of two Illinois court orders.

16. An original felony information was not filed by the prosecution. However, under MCR 6.112(G), dismissal for a violation of MCR 6.112(C) is precluded absent a showing of prejudice. Defendant failed to show prejudice and, therefore, the trial court did not err by failing to dismiss the case.

17. The trial court did not abuse its discretion by denying defendant's motion for a mistrial following a police officer's unresponsive, volunteered testimony that the police found marijuana in defendant's bedroom, which testimony violated the court's ruling that the evidence would be admitted only under a certain circumstance, which had not occurred. The comment was an isolated comment that was not repeated or explored further and the court provided a comprehensive curative instruction.

Affirmed.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — WORDS AND PHRASES — DETAINER.

A "detainer" under the Interstate Agreement on Detainers is a written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state; once a detainer is filed, the Interstate Agreement on Detainers is triggered and compliance with the provisions of the agreement is required (MCL 780.601).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — COMMENCEMENT OF PROCEEDINGS — TOLLING.

A prisoner transferred to Michigan under article IV(c) of the Interstate Agreement on Detainers must be tried within 120 days of the prisoner's arrival in Michigan; the 120-day time limit may be tolled for any period that is the result of any necessary or reasonable continuance for good cause shown in open court with the defendant or the defendant's counsel present, including any period of delay caused by the defendant's request or ordered to accommodate the defendant; an order of the Court of Appeals granting an application by the prosecution to bring an interlocutory appeal and staying the lower court proceedings may be a necessary and reasonable continuance granted for good cause shown although it was entered without the physical presence of the defendant or the defendant's counsel (MCL 780.601).

3. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL.

The Court of Appeals applies a four-part balancing test in determining whether a criminal defendant has been denied the right to a speedy trial; the four factors include the length of the delay, the reason for the delay, the defendant's assertion of the right, and the prejudice to the defendant; the burden is on the defendant to show that he or she suffered prejudice where the delay from the date of the defendant's arrest until the time that the trial commences is under 18 months; prejudice is presumed and the burden is on the prosecution to rebut the presumption where the delay is over 18 months (US Const, Am VI; Const 1963, art 1, §20).

4. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL — INHERENT DELAYS.

Although delays inherent in the court system, like docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant has been denied a speedy trial.

5. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL RIGHT — INTERLOCUTORY APPEALS.

The time taken by the prosecution to successfully pursue an interlocutory appeal is taken out of the calculation when determining whether the defendant has been denied the right to a speedy trial.

6. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL — PREJUDICE.

Two types of prejudice, prejudice to the person and prejudice to the defense, may occur as a result of a delay between the date of a defendant's arrest and the date of the defendant's trial; the most

significant concern is whether the defendant's ability to defend himself or herself has been prejudiced.

7. CRIMINAL LAW — EVIDENCE — EVIDENCE OF SIMILAR ACTS.

A four-part test is employed to show logical relevance where evidence of similar acts is offered to show a defendant's identification through modus operandi: the test requires that there is substantial evidence that the defendant committed the similar act, that there is some special quality of the act that tends to prove the defendant's identity, that the evidence is material to the defendant's guilt, and that the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice (MRE 404([b]).

8. CRIMINAL LAW — JURY INSTRUCTIONS — UNANIMOUS VERDICTS.

A criminal defendant has a right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement.

9. CRIMINAL LAW — SENTENCES — OFFENSE VARIABLE 4 — PSYCHOLOGICAL INJURY.

Ten points are properly scored under offense variable 4 when serious psychological injury requiring professional treatment occurred to a crime victim; the fact that professional treatment was not sought is not conclusive when scoring the variable (MCL 777.34).

10. CRIMINAL LAW — SENTENCES — OFFENSE VARIABLE 10 — PREDATORY CONDUCT.

Conduct, to be considered predatory conduct for purposes of offense variable 10, must have occurred before the commission of the sentencing offense; the preoffense conduct must also have been directed at the victim for the primary purpose of victimization (MCL 777.40).

11. CRIMINAL LAW — SENTENCES — OFFENSE VARIABLE 12 — CONTEMPORANEOUS FELONIOUS CRIMINAL ACTS.

A trial court may score points for offense variable 12 if the defendant committed felonious criminal acts contemporaneously with the sentencing offense; a contemporaneous criminal act is one that occurred within 24 hours of the sentencing offense and has not and will not result in a separate conviction (MCL 777.42).

12. SENTENCES — VICTIM IMPACT STATEMENTS — PRESENTENCE INVESTIGATION REPORTS.

Individuals who suffer direct or threatened harm as a result of a convicted individual's crime have the right to submit an impact

statement both at the sentencing hearing and for inclusion in the presentence investigation report, however, the right is not limited exclusively to the defendant's direct victims (MCL 780.764, 780.765).

13. ATTORNEY AND CLIENT — ATTORNEY-CLIENT PRIVILEGE — ASSERTION OF PRIVILEGE.

The attorney-client privilege belongs to the client, not the attorney; the privilege may be asserted by the client but not the attorney.

14. SEARCHES AND SEIZURES — AFFIDAVITS — HEARSAY EVIDENCE.

A search warrant may be issued on the basis of an affidavit that contains hearsay as long as the police have conducted an independent investigation to verify the information.

15. SEARCHES AND SEIZURES — AFFIDAVITS — FALSE INFORMATION — BURDEN OF PROOF.

A defendant seeking to suppress evidence obtained pursuant to a search warrant allegedly procured with an affidavit containing false information has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause.

16. CRIMINAL LAW — DEFECTIVE INFORMATIONS — PREJUDICE — BURDEN OF PROOF.

The dispositive question in determining whether a defendant was prejudiced by a defect in the information is whether the defendant knew the acts for which the defendant was being tried so that the defendant could adequately put forth a defense; the burden is on the defendant to demonstrate prejudice and thus establish that the error was not harmless (MCR 6.112).

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Mark G. Sands*, Assistant Attorney General, for the people.

*State Appellate Defender* (by *Brandy Y. Robinson*) and Steven M. Waclawski, *in propria persona*.

Before: FORT HOOD, P.J., and SAWYER and DONOFRIO, JJ.

DONOFRIO, J. Defendant appeals as of right his jury trial convictions of one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c, five counts of using a computer to produce child sexually abusive material, MCL 752.797(3), and one count of producing child sexually abusive material, MCL 750.145c(2). The trial court sentenced defendant to 209 to 480 months' imprisonment for the CSC-I conviction, 86 to 180 months' imprisonment for both CSC-II convictions, and 95 to 240 months' imprisonment for each of the remaining convictions, all sentences running concurrently. Because none of defendant's arguments on direct appeal or contained in his Standard 4 brief[1] merit relief, we affirm.

I

Defendant was initially arrested in Illinois when he traveled to that state to meet with a person he thought was a 14-year-old boy. Defendant had "met" the boy through Internet chat room communications (electronic messages) and arranged to meet him for sex. The boy was in fact a police detective, and when defendant arrived at the assigned location he was arrested.[2] When arrested, defendant admitted possessing child pornography on his computer. Subsequently, detectives in Michigan searched defendant's home and office computers, revealing various pornographic images depicting underage boys and defendant. The current charges

---

[1] Defendant raises several issues *in propria persona* in a supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

[2] Defendant pleaded guilty in Illinois to one count of indecent solicitation of a child, 720 Ill Comp Stat 5/11-6, and was sentenced to two years' imprisonment.

resulted from a search of defendant's computers, which revealed hundreds of images of male child pornography, some three dozen of which were taken in defendant's home and depicted three boys. The three boys had all spent the night at defendant's home on multiple occasions when no other adults were present. Three of the images, taken on August 23, 2001, allegedly depicted defendant performing fellatio on a 14-year-old boy with the first initial K.[3] Other photographs, taken on March 1, 2000, allegedly depicted P, a 12-year-old boy, with his penis being measured with a ruler. Photographs taken on June 15, 2001, allegedly depicted M, a 10-year-old boy, who was also photographed with his penis being measured with a ruler. Discovery of these pictures resulted in the Michigan charges against defendant.

The Attorney General's office prosecuted the case and filed a notice seeking to admit evidence of online electronic messages (chats) defendant exchanged with two underage boys named "Coty" and "Jason" located in Ohio and Illinois, respectively. Both "Coty" and "Jason" were in fact police officers. The prosecutor argued that the evidence was admissible pursuant to MRE 404(b) to prove defendant's intent, motive, scheme, plan, or system in perpetrating criminal sexual acts. Defendant moved the trial court to suppress all evidence of his online chats in Ohio and Illinois. The trial court granted defendant's motion to exclude the evidence in an opinion and order issued February 6, 2007, finding that the acts in Ohio and Illinois were "substantially different" from the acts alleged in the instant case and, therefore, the probative value was substantially outweighed by the danger of unfair prejudice. The prosecutor applied for leave to appeal and

---

[3] For the privacy of the victims in this case, we refer to each of the three victims only by the first letter of their first name to ensure anonymity.

moved to stay circuit court proceedings pending an interlocutory appeal. This Court granted the prosecutor's application and motion for a stay in an unpublished order entered February 14, 2007 (Docket No. 276094).

In an unpublished opinion issued October 11, 2007, this Court reversed the circuit court's February 6, 2007, order excluding other acts evidence and remanded the matter to the circuit court for trial. *People v Waclawski*, unpublished opinion per curiam of the Court of Appeals, issued October 11, 2007 (Docket No. 276094). The Internet chats constituting the challenged "other acts evidence" were well documented by the panel that handled the interlocutory appeal in the previous unpublished decision of this Court, thus, we include a portion of the fact section of that opinion detailing defendant's internet chats:

> On February 25, 2006, defendant contacted "jason_12parma" in a chat room, and they exchanged messages for about 45 minutes, discussing fellatio and a possible future sexual encounter. Defendant asserted that he was a 42-year-old man from Monroe, and "Jason" claimed to be a 12-year-old boy living in Ohio. "Jason" was actually an undercover police officer. Defendant and "Jason" communicated online on February 28, 2006, March 4, 2006, and March 6, 2006, discussing fellatio and the possibility of getting together so that defendant could perform fellatio on "Jason." On March 4, 2006, defendant asked "Jason" if he had been circumcised and whether he had ever measured his penis. When "Jason" stated that he had never measured it, defendant asked him to estimate its size.
>
> On March 10, 2006, "Jason" contacted defendant and they communicated for about 90 minutes, discussing fellatio and arrangements they had made to meet on the following Friday. Defendant stated that he would find a "nice hotel" and perform fellatio on "Jason." On March 13, 2006, "Jason" contacted defendant, and they chatted about fellatio, masturbation, and the upcoming plans. On March

15, 2006, "Jason" contacted defendant, and they chatted about fellatio, masturbation, and they confirmed the upcoming plans for that Friday, March 17, 2006. Apparently, defendant did not arrive at the prearranged location on that date. Rather, he traveled to Wheaton, Illinois, for a similar encounter.

On March 4, 2006, defendant contacted "cotyme_91" in a chat room, and they exchanged messages for about 50 minutes, discussing fellatio, and specifically, defendant performing fellatio on "Coty." "Coty" lived in Illinois and claimed to be a 14-year-old boy. "Coty" was actually an undercover police officer. On March 15, 2006, "Coty" contacted defendant, and they chatted online, discussing defendant performing fellatio on "Coty" and a possible encounter the following weekend. "Coty" stated that his penis was small, and defendant asked how small. On March 17, 2006, "Coty" and defendant made arrangements to meet at a park in Wheaton on March 18, 2006, and go to defendant's hotel room, where defendant planned to perform fellatio on "Coty." When defendant arrived at the meeting place, he was arrested. In July 2006, defendant was convicted of indecent solicitation of a child, 720 Ill Comp Stat 5/11-6, and sentenced to two years in prison. [*Id.* at 2.]

In reversing the circuit court's order excluding the other acts evidence, this Court found that "the circuit court's discretion was exercised within an erroneous legal framework." *Id.* at 4. This Court then remanded the case back to the trial court for reconsideration of the issue in light of this Court's opinion. *Id.* On remand, at a hearing on November 2, 2007, the trial court revisited the other acts evidence issue and reversed itself, holding that it would allow the evidence under MRE 404(b) "insofar as it is logically relevant." The matter eventually proceeded to a jury trial where defendant was convicted as charged. Defendant now appeals as of right.

II

Defendant first argues that this Court must dismiss the charges against him because the prosecution failed to bring him to trial within 120 days of its request for disposition under the Interstate Agreement on Detainers (IAD), MCL 780.601. "We review for an abuse of discretion a trial court's decision on a motion to dismiss." *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). A court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). "However, we review for clear error a trial court's attributions of delay." *Stone, supra* at 242. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* "Additionally, we review de novo the interpretation and application of statutes." *Id.*

There are two subparts to this issue on appeal. First, there is the question whether the 120-day or the 180-day deadline set by the IAD applies to the facts of this case. It does not appear that the trial court ever addressed this question. Next, the second question involves the application of either the 120-day or the 180-day deadline to the procedural history of this case and whether pursuant to the IAD the trial court abused its discretion when it denied defendant's motion for dismissal of the charges against him for violating his rights under the IAD.

A

" 'Forty-eight States, [including Michigan,] the Federal Government, and the District of Columbia . . . have entered into the Interstate Agreement on Detainers . . . .' " *People v Swafford*, 483 Mich 1, 8; 762 NW2d

902 (2009), quoting *Alabama v Bozeman*, 533 US 146, 148; 121 S Ct 2079; 150 L Ed 2d 188 (2001). "The purpose of the IAD is to facilitate the prompt disposition of outstanding charges against an inmate incarcerated in another jurisdiction." *People v Patton*, 285 Mich App 229, 232; 775 NW2d 610 (2009).

In Michigan, the IAD was enacted into law by MCL 780.601. Article III (extradition instituted by the prisoner—time limit 180 days) and Article IV (extradition instituted by the prosecutor—time limit 120 days) of the IAD are relevant to whether the 120-day or the 180-day period applies in this case:

Article III

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint*: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

(b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by

the prisoner to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

(c) The warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

(d) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall operate as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged against the prisoner from the state to whose prosecuting official the request for final disposition is specifically directed. The warden, commissioner of corrections or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the state to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner. Any notification sent pursuant to this paragraph shall be accompanied by copies of the prisoner's written notice request, and the certificate. If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

(e) Any request for final disposition made by a prisoner pursuant to paragraph (a) hereof shall also be deemed to be a waiver of extradition with respect to any charge or proceeding contemplated thereby or included therein by reason of paragraph (d) hereof, and a waiver of extradition to the receiving state to serve any sentence there imposed upon him, after completion of his term of imprisonment in the sending state. The request for final disposition shall also constitute a consent by the prisoner to the production

of his body in any court where his presence may be required in order to effectuate the purposes of this agreement and a further consent voluntarily to be returned to the original place of imprisonment in accordance with the provisions of this agreement. Nothing in this paragraph shall prevent the imposition of a concurrent sentence if otherwise permitted by law.

(f) Escape from custody by the prisoner subsequent to his execution of the request for final disposition referred to in paragraph (a) hereof shall void the request.

## Article IV

(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: And provided further, That there shall be a period of 30 days after receipt by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner.

(b) Upon receipt of the officer's written request as provided in paragraph (a) hereof, the appropriate authorities having the prisoner in custody shall furnish the officer with a certificate stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. Said authorities simultaneously shall furnish all other officers and appropriate courts in the receiving state who have lodged detainers against the

prisoner with similar certificates and with notices inform-
ing them of the request for custody or availability and of
the reasons therefor.

(c) In respect of any proceeding made possible by this
Article, *trial shall be commenced within one hundred
twenty days of the arrival of the prisoner in the receiving
state*, but for good cause shown in open court, the prisoner
or his counsel being present, the court having jurisdiction
of the matter may grant any necessary or reasonable
continuance.

(d) Nothing contained in this Article shall be construed
to deprive any prisoner of any right which he may have to
contest the legality of his delivery as provided in paragraph
(a) hereof, but such delivery may not be opposed or denied
on the ground that the executive authority of the sending
state has not affirmatively consented to or ordered such
delivery.

(e) If trial is not had on any indictment, information or
complaint contemplated hereby prior to the prisoner's
being returned to the original place of imprisonment pur-
suant to Article V(e) hereof, such indictment, information
or complaint shall not be of any further force or effect, and
the court shall enter an order dismissing the same with
prejudice. [Emphasis added.]

The parties are at odds about which document trig-
gered the IAD and, as a result, which time line applies
in the matter, 120 days or 180 days. The trial court did
not make any findings in this regard. Defendant argues
that the prosecutor initiated the application of the
IAD's procedures pursuant to Article IV of the IAD on
August 10, 2006, when the prosecutor sent a request for
custody of defendant to the Illinois Department of
Corrections (IDOC) through a standard Form V of the
IAD "Request for Temporary Custody," in order to
bring defendant back to Michigan to face the untried
charges. The form lists the charges against defendant
and states that the prosecutor "request[s] temporary

custody of the prisoner pursuant to Article IV(a) of the Interstate Agreement on Detainers (IAD)." The form was addressed to the prison warden and is signed by the prosecuting officer as well as a 40th District Court judge. Defendant further asserts that he made no valid request for extradition pursuant to the IAD. It appears from the record that on September 8, 2006, defendant completed Form I of the IAD "Notice of Untried Indictment, Information or Complaint and of Right to Request Disposition," and Form II of the IAD "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints." Form I demands that he be brought to trial within 180 days pursuant to Article IV of the IAD. Defendant alleges that the IDOC failed to mail his Form I to the 40th District Court. The prosecutor's brief on appeal indicates that the IDOC did not send the defendant's Form I request. For all these reasons, defendant asserts that the IAD mandates that he be brought to trial within 120 days of his arrival in Michigan subject only to tolling for delays requested by the defense pursuant to Article IV of the IAD.

The prosecutor responds that the 180-day period under Article III controls in this case because defendant did not acknowledge the prosecutor's Article IV request and instead filed his own demand to be tried on the instant charges in Michigan under Article III. The prosecutor contends that defendant acted contrary to his right to be tried within 120 days of his arrival in Michigan under Article IV when he demanded to face the Michigan charges within 180 days of his request under Article III. The prosecutor asks this Court to hold that by initiating his own Article III request defendant waived his right to the shorter 120-day period. The prosecutor cites no Michigan law for this proposition and instead cites cases from other states and federal

districts. The prosecutor also does not address the Form I mailing situation, wherein it appears that defendant's Form I request was never mailed by the IDOC or received by the district court.

The prosecutor ignores this Court's holding in *People v Gallego*, 199 Mich App 566, 574; 502 NW2d 358 (1993), that "[o]nce a detainer is filed, it is then that the IAD is triggered and compliance with the provisions of the agreement is required." This Court recently cited *Gallego* in its holding in *Patton, supra*. The *Patton* Court stated, "There is no exact definition of the term 'detainer,' but 'it has generally been recognized to mean written notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending charges in the notifying state.' " *Patton, supra* at 232 n 1, quoting *Gallego, supra* at 574.

There is no doubt that the prosecutor sent a request for custody of defendant to Illinois on August 10, 2006, through a standard Form V of the IAD "Request for Temporary Custody," in order to bring defendant back to Michigan to face the untried charges before any action was taken on defendant's part. The form clearly lists the charges against defendant and states that the prosecutor "request[s] temporary custody of the prisoner pursuant to Article IV(a) of the Interstate Agreement on Detainers (IAD)." The form was addressed to Warden Deirdre Battaglia and is signed by the prosecuting officer as well as a 40th District Court judge on August 10, 2006. Pursuant to both *Patton* and *Gallego*, Form V of the IAD meets the generally recognized requirements of the term "detainer." *Patton, supra* at 232 n 1, quoting *Gallego, supra* at 574. As such, pursuant to *Gallego* once the prosecutor initiated Form V, " 'the IAD is triggered and compliance with the

provisions of the agreement is required.' " *Patton, supra* at 232, quoting *Gallego, supra* at 574. Because Article IV of the IAD was triggered by the prosecutor's completion and submission of Form V, compliance with the triggered provision is required, and therefore the appropriate time limit is 120 days pursuant to Article IV(c). *Id.*

B

Next, we must address whether the trial court abused its discretion is declining to dismiss the charges against defendant because of the prosecutor's failure to bring defendant to trial within the IAD's proper time line, which we have just determined is 120 days pursuant to Article IV(c).

A prisoner who is transferred to Michigan under Article IV(c) of the IAD must be tried within 120 days of his or her arrival in the state, MCL 780.601. "Failure to strictly comply with the 120-day provision requires the trial court to dismiss any charges brought against the defendant under the IAD." *Stone, supra* at 243. "However . . . the 120-day time limit may be tolled for any period that is the result of any necessary or reasonable continuance for good cause shown in open court with the defendant or the defendant's counsel present." *Id.* "[S]uch a continuance includes any period of delay caused by the defendant's request or ordered to accommodate the defendant." *Id.* IAD Article IV(c) states specifically, "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." MCL 780.601.

"[I]f a delay is caused by the defendant's request or in order to accommodate the defendant, the period of delay attributable to defendant is not used in calculating the 120-day time period." *People v Cook*, 95 Mich App 645, 653; 291 NW2d 152 (1980). Here, the parties disagree on the assignment of days throughout the protracted proceedings. We have scoured the record and present the following summary of the procedural history of the case.

The Illinois court sentenced defendant on July 20, 2006, and defendant remained incarcerated in Illinois under the jurisdiction of the IDOC. On August 10, 2006, the Michigan Attorney General's office requested that defendant be transferred to Michigan custody pursuant to the IAD, MCL 780.601. Defendant was extradited to Michigan on October 10, 2006. After defendant requested adjournment of the preliminary examination three times, the district court bound defendant over for trial on December 8, 2006. Trial was scheduled to start January 17, 2007, then adjourned to February 15, 2007. In the mean time, the prosecutor filed a notice seeking to admit evidence of defendant's online chats with "Coty" and "Jason" pursuant to MRE 404(b). Defendant moved in the trial court to suppress evidence of his online chats and the trial court did so in an opinion and order issued February 6, 2007. The prosecutor applied for leave to appeal and moved to stay circuit court proceedings pending an interlocutory appeal. This Court granted the prosecutor's application and motion for a stay in an order entered February 14, 2007. This Court reversed the trial court's order excluding other acts evidence and remanded the matter to the circuit court for trial on October 11, 2007. *People v Waclawski*, unpublished opinion per curiam of the Court of Appeals, issued October 11, 2007 (Docket No. 276094).

On remand, at a hearing on November 2, 2007, the trial court revisited the other acts evidence issue and reversed itself, holding that it would allow the evidence under MRE 404(b) "insofar as it is logically relevant." Immediately following remand, defendant moved in the trial court to dismiss all charges against him on the basis of the denial of his rights under the protections of the IAD. The trial court considered defendant's motion at a hearing held November 13, 2007. Defendant argued that under the IAD, the state was required to bring defendant to trial within either 120 or 180 days and that both of those periods had passed even if one deducted delays and adjournments attributable to defendant are deducted. Defendant specifically argued that the delay in bringing him to trial because of the interlocutory appeal in Docket No. 276094—a total of 239 days from February 14 to October 11, 2007—was attributable to the prosecutor. Defendant pointed out that the prosecutor knew of the time restraints placed by the IAD, yet still pursued the appeal and a stay of proceedings pending appeal even though the challenged other acts evidence was not necessary for trial. It was defendant's position that because well over 180 days had passed, the circuit court no longer had jurisdiction over the charges and defendant was entitled to dismissal with prejudice. The prosecutor argued that dismissal was appropriate only where the prosecution committed egregious mistakes and that delays over the time limits were allowed where reasonable and for good cause. The prosecutor argued specifically that the Court of Appeals obtained jurisdiction over the matter when it granted the application and effectively found good cause to delay the trial when it granted a stay of circuit court proceedings pending appeal. Furthermore, the prosecutor contended that

because any effective continuance was granted for good cause, the time limits set by the IAD were tolled and defendant was not denied his right to a speedy trial under the statute. The trial court denied defendant's motion, explaining as follows:

> This court cannot find any bad faith on behalf of the People and your motion is denied . . . .
>
> I believe that the People acted in good faith. The Court of Appeals in its wisdom took as long as they took for whatever reason. This court was always prepared to proceed to trial. And I don't believe that a liberal construction would mandate that the People's ability to appeal what obviously was an error on this court's part in its interpretation of the law should be held against the state of Michigan and its People.

The circuit court signed a handwritten order denying defendant's motion on November 13, 2007. That order set a trial date of December 13, 2007. Defendant then moved to stay the trial pending an interlocutory appeal to this Court. The trial court considered that motion at a hearing held November 16, 2007. In a handwritten order signed November 16, 2007, the trial court denied defendant's motion to stay the trial but adjourned the trial date to January 15, 2008. The order states that the delay caused by this adjournment should be attributed to defendant. Defendant indeed applied to this Court for leave to appeal the trial court's November 13, 2007, order denying his motion to dismiss the charges against him on the basis of the denial of his right to a speedy trial under the IAD. Defendant moved for immediate consideration and to stay circuit court proceedings because his trial was scheduled to begin on January 15, 2008. This Court denied defendant's application for leave to appeal "for failure to persuade the Court of the need for immediate appellate review" in an order dated

January 11, 2008. *People v Waclawski*, unpublished order of the Court of Appeals, entered January 11, 2008 (Docket No. 282315).

While his application was pending in this Court, on January 7, 2008, defendant moved to substitute counsel and the trial court granted that request and appointed new counsel to represent him. The trial court adjourned the trial until an undetermined date and used the former January 15, 2008, trial date to conduct a pretrial conference. At the January 15, 2008, pretrial conference, defendant's attorney requested an additional week to review the trial materials. The pretrial conference was adjourned until January 24, 2008. Defendant's counsel informed the trial court on January 24, 2008, that he had not completed his review of the record and requested an extension. As a result of the defense request, the trial court adjourned the status conference until February 19, 2008. On February 19, 2008, the trial court set defendant's trial for March 25, 2008. But on March 17, 2008, defendant requested another adjournment to prepare for trial. The trial court initially denied the request, but reconsidered after the prosecutor expressed concern that defense counsel would not be ready for trial. The trial court ultimately agreed and stayed trial until May 6, 2008. Defendant's jury trial finally commenced on May 6, 2008.

In the interest of clarity, we have assigned responsibility for all the days of the procedural history of the case to either the prosecutor or defendant as charged at each relevant event in the record leaving a space for "days in question." In doing so, we followed the rule articulated in *Cook, supra* at 652-653, that delays attributable to the defendant are charged against the defendant as well as the dictates of MCR 1.108 in setting forth the following time schedule.

| DATES | EVENT | DAYS TO DEFEN- DANT (DAYS TOLLED) | DAYS TO PROS- ECUTOR (DAYS RUN) | DAYS IN QUES- TION |
|---|---|---|---|---|
| 10/10/2006 | Defendant arrives in Michigan. | | | |
| 10/10/2006- 10/24/2006 | Time between defendant's arrival in MI and first hearing on 10/24/2006. | | 14 | |
| 10/24/2006- 11/17/2006 | On 10/24/2006 defendant requests that his preliminary examination be adjourned to 11/17/2006. | 24 | | |
| 11/17/2006- 12/1/2006 | On 11/17/2006 defendant requests adjournment of his preliminary exam to 12/1/2006. | 14 | | |
| 12/1/2006- 12/8/2006 | Defendant and his attorney failed to attend the scheduled hearing on 12/1/2006. Defense attorney had filed a motion in advance of that day and the trial court granted it stating explicitly that the delay would be charged against defendant. | 7 | | |
| 12/8/2006- 1/11/2007 | Defendant was bound over for trial on 12/8/2006 and his trial date was scheduled for 1/17/2007. Defendant was arraigned in circuit court on 12/18/2006. | | 34 | |
| 1/11/2007- 2/14/2007 | On 1/11/2007 defendant requests adjournment of trial date to 2/15/2007 because defense counsel stated that he was not ready for trial. | 34 | | |
| 2/14/2007- 10/11/2007 | COA grants prosecutor's motion for leave to appeal and stays trial. | | | 239 |
| 10/11/2007- 11/2/2007 | COA remands case to trial court and stay is lifted in the trial court. | | 22 | |
| 11/2/2007- 11/13/2007 | On 11/2/2007 defendant requests that the trial court not set a trial date until the next hearing on 11/13/2007 in order to wait for a decision on defendant's motion re- garding the IAD and defendant himself states that "this case is no- where near ready to be tried." | 11 | | |
| 11/13/2007- 11/16/2007 | On 11/13/2007 trial date is set for 12/13/2007. | | 3 | |

| | | | | |
|---|---|---|---|---|
| 11/16/2007-1/15/2008 | On 11/16/2007 defendant requests a stay to file an application for leave to appeal to the COA which the trial court denied, but instead granted an adjournment of the 12/13/2007 trial date to 1/15/2008. Then, defendant's request for new counsel was granted on 1/7/2008 and the 1/15/2008 trial date was converted into a pretrial conference date. | 60 | | |
| 1/15/2008-1/24/2008 | Trial did not commence as scheduled on 1/15/2008 because defendant's new counsel requested additional time to review the file to determine what discovery was needed before a new trial date could be set. | | | |
| 1/24/2008-2/19/2008 | On 1/24/2008 defendant requested additional time to review the remainder of the discovery materials and coordinate with previous counsel. The trial court granted the request and set a final pretrial date for 2/19/2008. | 26 | | |
| 2/19/2008-3/17/2008 | On 2/19/2008 trial date is set for March 25, 2008. | | 27 | |
| 3/17/2008-5/6/2008 | On 3/17/2008 defense counsel requests adjournment of trial until 5/6/2008 in order to adequately prepare for trial. | 50 | | |
| 5/6/2008 | Jury trial commences | | 0 | |
| TOTAL | | 235 | 100 | 239 |

A total of 574 days passed from the time defendant was extradited to Michigan on October 10, 2006, to his trial date of May 6, 2008. After reviewing the record, it is clear that 127 days passed from October 10, 2006, to February 14, 2007, when this Court issued its order granting leave and staying circuit court proceedings in Docket Number 276094, 239 days passed from this Court's February 14, 2007, order to the date of its October 11, 2007, opinion in

Docket Number 276094, and 208 days from October 11, 2007, to the trial date on May 6, 2008.

Defendant argues that under Article IV(a) and (c) of the IAD, the prosecutor and the circuit court were required to bring him to trial within 120 days of his being extradited to Michigan on October 10, 2006. Our review of the record reveals that because the prosecutor was responsible for only 100 days (20 less than 120), the sole relevant issue is whether the 239-day period when trial was stayed by this Court is somehow attributed to the prosecutor and counted toward the 120-day deadline set by Article IV. In the trial court, the prosecutor contended that because any effective continuance was granted for good cause, the time limits set by the IAD were tolled and those days did not count against the prosecutor. The trial court agreed and denied defendant's motion on November 13, 2007.

The goal of judicial interpretation of a statute is to ascertain and give effect to the intent of the Legislature. *People v Pasha,* 466 Mich 378, 382; 645 NW2d 275 (2002). " 'The first step in that determination is to review the language of the statute itself.' " *Id.* (citation omitted). Thus, if the language is clear, no further construction is necessary or allowed to expand what the Legislature clearly intended to cover. *People v Borchard-Ruhland,* 460 Mich 278, 284; 597 NW2d 1 (1999).

Again, Article IV(c) of the IAD states specifically, "In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." MCL 780.601. While the prosecution

sought leave to appeal, it did so to correct the circuit court's erroneous decision on defendant's motion to exclude evidence, and the issue on appeal was resolved in the prosecutor's favor. This Court granted the application and stay of proceedings on the basis of its determination that the prosecutor's appeal had potential merit and clearly was one that needed to be resolved before the case went to trial. As such, the stay granted by this Court's February 14, 2007, order was a continuance that was both "necessary" and "reasonable" and was granted "for good cause shown" by a "court having jurisdiction of the matter" as required by the plain language of Article IV(c). See, also, *People v Meyers (On Remand)*, 124 Mich App 148, 156; 335 NW2d 189 (1983) (Pretrial delay caused by the need to obtain a transcript necessary to resolve a defendant's pretrial motion was found "necessary" and "reasonable" and tolled the running of the 120-day period under the IAD.)[4] Thus,

---

[4] This Court in *Meyers, supra* at 155-156, held as follows:

On April 10, 1979, both the defendants were arraigned in circuit court. Defendant Charles Meyers objected to the filed information, arguing that he had only been bound over on a single count of armed robbery. After the prosecutor informed the court that the return indicated that defendant Charles Meyers had been bound over on both charges, counsel for defendant Charles Meyers stated: "Well, we'll probably have to wait for the filing of the transcript." The following day the prosecutor contacted the court reporter in attendance at the preliminary examination and requested preparation of the preliminary examination transcript.

We agree with the circuit court's finding that the ensuing delay was necessary and reasonable and find that, under this peculiar set of facts, the act's 120-day period was properly tolled during the time it took to obtain the transcript, *i.e.*, from April 10, 1979, to June 11, 1979. Our conclusion is based upon a consideration of the following factors: (1) counsel for defendant Charles Meyers objected to the filed information, (2) the case could not proceed to trial while the parties were uncertain regarding the nature of the outstanding charges, (3) the defense counsel conceded that the examination transcript itself was necessary to clarify the problem, and (4) the prosecutor acted immediately to resolve the defen-

the 239-day delay when trial was stayed by this Court is not attributed to the prosecutor and is likewise not counted toward the 120-day deadline set by Article IV.

We find further support for our holding on this issue in Article IX of the IAD which states that, "[t]his agreement shall be liberally construed so as to effectuate its purposes." Again, the prosecution sought leave to appeal the circuit court's decision on the evidentiary issue in an attempt to right the circuit court's incorrect decision on defendant's motion to exclude the other acts evidence. This Court granted the application and stay because it believed that the prosecutor's appeal had merit and plainly needed to be resolved before the case proceeded to trial. Should the trial be lost after the prosecutor was denied the right to submit legally admissible evidence, jeopardy would have attached precluding an appeal on the evidentiary point. *People v Henry*, 248 Mich App 313, 318; 639 NW2d 285 (2001) (both the United States Constitution and the Michigan Constitution prohibit placing a defendant twice in jeopardy for a single offense). While defendant argues that the prosecutor could go forward without the improperly excluded evidence, the people have a right to a "criminal justice system in which the discovery of the truth [is] facilitated." *People v Yost*, 483 Mich 856, 859 (2009) (MARKMAN, J., concurring). The discovery of the truth relies on a process whereby all legally admissible evidence is admitted allowing the fact-finder a true picture of the events. Defendant has not provided any reason for us to ignore these pillars of the criminal law and

dant's objection. In addition, although only defendant Charles Meyers objected to the information at the arraignment, we hold that the 120-day period was tolled with respect to defendant Daniel Meyers as well because he was present at the arraignment when the objection was made and made no objection to the obvious delay that was to ensue.

instead interpret the IAD, a statutory time relief rule, in such a manner so as to allow a jury trial to proceed riddled with error to defendant's strategic advantage. It can even be said that defendant in fact created the circumstance that necessitated the delay when he sought to exclude the relevant other acts evidence. We cannot allow a defendant to trigger a situation whereby he or she creates an opportunity for the defendant to deny the people their right to have the defendant sentenced for his or her criminal deeds in contravention of the aims of the criminal law. Ultimately, this Court resolved the issue on interlocutory appeal in favor of the prosecutor. Under the specific circumstances presented in the instant case, the language of the statute is plain and it controls, meaning that no further construction is necessary. *Borchard-Ruhland, supra* at 284.

We also take this opportunity to point out that the requirement in Article IV(c) that good cause be shown in "open court [with] the prisoner or his counsel being present" is simply inapplicable to this Court. This Court does not conduct oral argument hearings in application matters. The requirement that a continuance be granted only in open court with the presence of defendant or counsel is obviously meant to limit adjournments granted ex parte to the prosecutor. As a general rule this Court will not consider ex parte applications and motions. See Court of Appeals IOP 7.209(I).[5] The docket entries in Docket Number 276094

---

[5] IOP 7.209(I) states as follows, in pertinent part:

**Ex Parte Stay.** Court policy discourages the use of the *ex parte* stay rule. The Court has almost universally required that all parties be served with a motion for stay in the Court of Appeals before it is submitted on the motion docket. If the motion for stay is accompanied by a motion for immediate consideration under MCR 7.211(C)(6), and if both motions are personally served on all parties, the motions will be submitted to a panel of judges as

show that defendant was given the opportunity to respond to the prosecutor's application and motion and filed an answer to the application before it was submitted to the panel, which effectuates the same purpose. Furthermore, in this particular case, defendant, an attorney and former prosecutor, stated on the record at a hearing before the trial court on January 7, 2008, that he was aware that he did not have a right to appear at a proceeding before the Court of Appeals. Given Article IX's instruction that the IAD's provisions should be liberally construed to effectuate its purpose, this Court's February 14, 2007, order is not deemed outside the scope of IAD Article IV(a) and (c) merely because it was entered without the physical presence of defendant or his counsel.

Because of the dearth of law on this issue, the prosecutor raises alternative grounds to affirm the trial court's conclusion that the 239-day delay caused by the prosecutor's interlocutory appeal to this Court should not be assigned to the prosecutor and not count toward the running of the 120-day deadline set by the IAD. The prosecutor urges this Court to apply the body of law applicable to the speedy trial rules because both the IAD and the speedy trial rules effectuate the same purpose, citing *United States v Odom*, 674 F2d 228, 231-232 (CA 4, 1982). The prosecutor also cites *United States v Cephas*, 937 F2d 816, 819 (CA 2, 1991), wherein it is stated:

> Given the similarities in the case-law development of excludable time under the two acts, and in the interests of consistent judicial administration, we now expressly hold

quickly as can be arranged by the district office in which the motions are filed. In matters of extreme urgency, it is possible to accomplish service, filing, submission, and a ruling in a matter of hours. Thus, there is virtually no justification for invoking the provisions of the *ex parte* rule.

> that the "for good cause shown" standard of the detainer
> act should encompass the same conditions and circum-
> stances as the rules for excludable time under the speedy
> trial act. [*Id.*]

Indeed, this Court has held that the time the pros-
ecution takes to successfully pursue an interlocutory
appeal is "taken out of the calculation" for purposes of
an alleged speedy trial violation. *People v Missouri*, 100
Mich App 310, 321; 299 NW2d 346 (1980). (See Section
III of this opinion for a full discussion of the rules
relating to speedy trial requirements). We do conclude
that the bodies of law are analogous and find the speedy
trial cases instructive.

For all these reasons, we conclude that the circuit
court did not clearly err by holding that the 239-day
delay caused by this Court's February 14, 2007, order
staying proceedings would not count toward the run-
ning of the 120-day deadline set by the IAD.

III

Defendant next argues that he was deprived of his
Sixth Amendment right to a speedy trial when 19
months lapsed between his arrest and the commence-
ment of his trial as a result of delays largely attributable
to the prosecution. The determination whether a defen-
dant was denied a speedy trial is a mixed question of
fact and law. *People v Walker*, 276 Mich App 528, 540;
741 NW2d 843 (2007), vacated in part on other grounds
480 Mich 1059 (2008). The factual findings are reviewed
for clear error, while the constitutional issue is a ques-
tion of law subject to review de novo. *People v Williams*,
475 Mich 245, 250; 716 NW2d 208 (2006). In addition,
this Court must determine whether any error was
harmless beyond a reasonable doubt. *Walker, supra* at
540. Violation of the constitutional right to a speedy

trial requires dismissal of the charge with prejudice. MCR 6.004(A); *Walker, supra* at 541.

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20; see also MCL 768.1; MCR 6.004(A). In determining whether a defendant has been denied this right, this Court applies a four-part balancing test. *Williams, supra* at 261-262. The four factors include: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Id.* The first and fourth factors are critical to our analysis. If the total delay, which runs from the date of the defendant's arrest until the time that trial commences, *id.* at 261, is under 18 months, then the burden is on the defendant to show that he or she suffered prejudice. *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999). However, if the delay is over 18 months, prejudice is presumed and the burden is on the prosecution to rebut the presumption. *Id.*

Applying these principles to the present matter, we cannot conclude, despite the length of delay in this matter, that the trial court erred by finding that defendant's right to a speedy trial was not violated.

## A. LENGTH OF DELAY

Because the length of the delay between the issuance of defendant's arrest warrant on April 11, 2006, and the start of his trial on May 9, 2008, was approximately 24 months, the delay was presumptively prejudicial and the burden is on the prosecution to rebut the presumption. *Cain, supra* at 112. Although the length of delay in this case is considerable, there is no set number of days between a defendant's arrest and trial that is determinative of a speedy trial claim. *Williams, supra* at 261; also see *People v Cutler*, 86 Mich App 118, 126-127; 272 NW2d

206 (1978) (37-month delay, but no violation); *People v Smith*, 57 Mich App 556, 563-567; 226 NW2d 673 (1975) (19-year delay, but no violation). In any case, this factor weighs in defendant's favor and, because the delay in this case is presumptively prejudicial, it is necessary for us to examine the remaining factors. *Williams, supra* at 262.

### B. REASONS FOR DELAY

In assessing the reasons for delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution. *Walker, supra* at 541-542. "Unexplained delays are charged against the prosecution. Scheduling delays and docket congestion are also charged against the prosecution." *Id.* at 542. However, "Although delays inherent in the court system, e.g., docket congestion, are technically attributable to the prosecution, they are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams, supra* at 263 (citations and quotation marks omitted).

In the chart above in part II(B) of this opinion we clearly delineated whether certain delays were the fault of the prosecutor or defendant. The only amount of time we must include here that is not in the chart is the time between defendant's arrest warrant being issued in Michigan on April 11, 2006, and his arrival in Michigan on October 10, 2006. Defendant could not be arrested in Michigan because he was already detained in Illinois on other criminal charges. Defendant pleaded guilty to the Illinois charges on July 27, 2006. On August 10, 2006, the prosecutor then initiated the IAD process in order to have defendant extradited to Michigan to face the charges pending against him here. Clearly defendant needed to be brought back to Michigan to face the charges in Michigan but that could not happen until the

Illinois matter was resolved and the administrative process of the IAD instituted. We therefore assign the days between April 11, 2006, and July 27, 2006, to defendant because defendant was unavailable to be tried in Michigan at that time as a result of his own criminal behavior, arrest, and detention. After defendant pleaded guilty to the Illinois charges he became available for transfer to Michigan and thus, we assign the days beginning on July 28, 2006, until October 10, 2006, to the prosecutor. On the whole, these delays simply cancel each other out.

The remainder of the reasons for the delays are easily discernable from the record and we have outlined them in the chart above in part II(B) of this opinion. The prosecutor was responsible for 100 days of delay from the time defendant arrived in Michigan until his trial, defendant was responsible for 235 days of delay, and the remaining 239 days are a result of the delay associated with the interlocutory appeal brought to this Court by the prosecutor. As a result, defendant's main contention is that the delay caused by the prosecutor's interlocutory appeal that was pending before this Court for 239 days should be weighed against the government. However, this Court has held that the time the prosecution takes to successfully pursue an interlocutory appeal is "taken out of the calculation." *Missouri, supra* at 321. Thus, we do not assign this delay any weight in favor of either the prosecutor or defendant. Because the 239 day delay is not attributable to either party, this factor weighs against defendant because he was responsible for more than twice the number of days than the prosecutor.

### C. ASSERTION OF RIGHT

There is some consternation between the parties about when defendant asserted his right to a speedy

trial. Defendant states that he submitted his demand for a speedy trial to the 40th District Court on July 20, 2006, from the Illinois jail. However the prosecutor points out that the only demand for a speedy trial that is contained in the court record is dated as having been received by the Macomb Circuit Court on December 27, 2007. Because defendant's claim that he submitted his demand for a speedy trial on July 20, 2006, is not supported by the record, we must credit only the request by defendant that is supported by the record, and that is the one dated December 27, 2007. The trial court did not even address the matter until a hearing on April 28, 2008, only a few weeks before trial. Because defendant's trial began little more than five months after he filed his December 27, 2007, speedy trial demand, this factor weighs only the slightest in defendant's favor.

### D. PREJUDICE

With respect to prejudice, in his brief on appeal, defendant does not offer much of an explanation regarding how he was prejudiced by the delay. The prosecutor states that defendant was not prejudiced at all by the delay between the date of the arrest warrant and his trial date. In assessing this factor, this Court recognizes that "there are two types of prejudice[:] prejudice to the person and prejudice to the defense." *People v Wickham*, 200 Mich App 106, 112; 503 NW2d 701 (1993). "Prejudice to the defense is the more serious concern, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Williams*, *supra* at 264 (quotation marks and citations omitted). Our Supreme Court has repeatedly recognized in the context of lengthy pretrial incarcerations that the most significant concern is whether the defendant's ability to

defend himself or herself has been prejudiced. *Id.* Defendant makes no claim that because of the delay he was somehow unable to defend himself. To the contrary, the record shows that throughout the time defendant was awaiting trial he was represented by three different attorneys at his request, and that his attorneys continued to request more time in order to prepare for trial. Defendant himself once admitted to the trial court that the case was nowhere near ready to be tried. The prosecutor points out that there is no indication that a potential defense witness was lost or that other exculpatory evidence was misplaced during the delay. After reviewing the record, we conclude that defendant was not prejudiced by the delay. Accordingly, this factor weighs heavily against defendant.

### E. CONCLUSION

Although a 24-month delay is presumptively prejudicial and defendant did assert his right to a speedy trial, because the reasons for the delay weighed against defendant and defendant's ability to prepare a defense was not prejudiced, we conclude that the trial court properly held that defendant's right to a speedy trial was not violated.

### IV

Defendant next argues that he is entitled to a new trial on the basis that the trial court abused its discretion by allowing the jury to be exposed to unfairly prejudicial other acts evidence and he notes that even a cursory review of the record reveals that one of the primary reasons defendant stands convicted is the evidence admitted over defense objection that defendant sent sexually explicit electronic messages over the Internet to individuals he believed were minors. The

admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion. *People v Crawford*, 458 Mich 376, 383; 582 NW2d 785 (1998); *People v McGhee*, 268 Mich App 600, 609; 709 NW2d 595 (2005). A court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). The determination whether the probative value of evidence is substantially outweighed by its prejudicial effect is best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony. *People v Magyar*, 250 Mich App 408, 416; 648 NW2d 215 (2002).

Defendant specifically contends that he is entitled to a new trial because the trial court abused its discretion by allowing the jury to be exposed to unfairly prejudicial other acts evidence of his online chats in Ohio and Illinois under MRE 404(b). He asserts that review of the chats reveals that the conduct involved was entirely dissimilar from the charged offenses. The prosecutor responds that the trial court acted properly within its discretion by admitting the other acts evidence because it was probative with regard to defendant's intent to commit first-degree criminal sexual conduct as well as his common scheme of targeting minor male victims.

Use of other acts as evidence of character is excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998); *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). A prosecutor may not introduce evidence of other crimes, wrongs, or acts in order to prove a defendant's character or propensity for criminal behavior. MRE 404(b); *People v VanderVliet*, 444 Mich

52, 74; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). However, the evidence may be "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MRE 404(b)(1).

Our Supreme Court in *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004), stated as follows:

> In *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993), this Court articulated the factors that must be present for other acts evidence to be admissible. First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402, as enforced through MRE 104(b)[.]" *Id.* Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105.

"MRE 404(b) 'permits the admission of evidence on any ground that does not risk impermissible inferences of character to conduct.'" *People v Watson*, 245 Mich App 572, 576; 629 NW2d 411 (2001), quoting *Starr, supra* at 496. After reviewing the record, we conclude that the challenged evidence clearly demonstrates both intent and identity, as well as common scheme, plan, or system. Evidence that defendant questioned two persons that he believed to be male children under the age of 15 in Illinois and Ohio about their penis size, solicited them for the purpose of performing fellatio, arrived in Illinois with a digital camera, and admitted to the Illinois police that he intended to use the camera to take sexually explicit pictures of "Coty" shows that defen-

dant intended to perform fellatio on K and measure the penises of M and P. The evidence also demonstrates defendant's intent to photograph these incidents and defendant's identity as the person who in fact performed the acts depicted in the photographs. Regarding common scheme, plan, or system, clearly defendant selected male children under the age of 14 as his target victims, he had specific desires to inquire regarding their penis size, measure their penis size with a ruler, perform fellatio on them, and take sexually explicit photographs of the victims.

Furthermore, defendant pleaded not guilty to all charges brought against him in Michigan. All elements of a criminal offense are "in issue" when a defendant pleads not guilty. *Crawford, supra* at 389. Relevant evidence must be related to a fact that is of consequence to the action. *People v Sabin (After Remand),* 463 Mich 43, 57; 614 NW2d 888 (2000). Because the evidence of defendant's possession of a digital camera in Illinois and his online chats with "Jason" and "Coty" regarding fellatio and penis size make it more likely that defendant performed fellatio on K, measured the penises of M and P, and photographed the incidents it is plainly relevant. MRE 401; MRE 402.

The probative value of the evidence is not outweighed by the danger of unfair prejudice under MRE 403. Unfair prejudice occurs "when there is a tendency that the evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence." *People v Taylor,* 252 Mich App 519, 521-522; 652 NW2d 526 (2002). On defendant's computer, the police found three photographs of someone performing fellatio on K, a 14-year-old boy, photographs of P, a 12-year-old boy, who was photographed with his penis being measured, and photo-

graphs of M, a 10-year-old boy, who was photographed with his penis being measured. As discussed above, the evidence of the online chats in Ohio and Illinois supply proof that defendant intended to perform fellatio on K who was the same age as "Coty" and two years older than "Jason." The evidence of the chats and the digital camera also supply proof that defendant intended to measure the penises of M, who was two years younger than "Jason" and four years younger than "Coty," and P, who was the same age as "Jason" and two years younger than "Coty." Further, this evidence provides proof that defendant was the person portrayed in the photographs and that he intended to photograph all these incidents. In sum, the evidence fulfilled purposes of supplying proof of intent, identity, and common scheme, plan, or system and it was relevant and more probative than prejudicial.

To the extent that the prosecution also offered evidence of the Ohio and Illinois chats to prove defendant's identity as the perpetrator, in *People v Ho*, 231 Mich App 178, 186; 585 NW2d 357 (1998), this Court stated:

> Although the *VanderVliet* Court adopted a new test for admission of evidence under MRE 404(b), the four-part test of *People v Golochowicz*, 413 Mich 298, 309; 319 NW2d 518 (1982), remains valid to show logical relevance where similar-acts evidence is offered to show identification through modus operandi. *People v McMillan*, 213 Mich App 134, 138; 539 NW2d 553 (1995). The *Golochowicz* test requires that (1) there is substantial evidence that the defendant committed the similar act (2) there is some special quality of the act that tends to prove the defendant's identity (3) the evidence is material to the defendant's guilt, and (4) the probative value of the evidence sought to be introduced is not substantially outweighed by the danger of unfair prejudice. *Golochowicz, supra* at 307-309.

Here, there is substantial evidence that defendant committed the other acts in Illinois and Ohio. He was convicted of indecent solicitation of a child in Illinois, and he used the same screen name to communicate with "Jason" in Ohio. The online chats in Ohio and Illinois, coupled with the discovery of defendant's digital camera in Illinois and his admission to the Illinois police that he intended to use the camera to take sexually explicit pictures of "Coty," show a special quality or circumstance because they show defendant's fixation on the penis size of prepubescent boys and his preoccupation with performing fellatio on them, as well as his desire to photograph these acts.

Defendant argues that as a result of the admission of the other acts evidence the jury convicted him because he was a "bad man." But, the trial court provided a comprehensive limiting instruction to the jury that the prior acts evidence could only be considered for very limited purposes. "It is well established that jurors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). After reviewing the record, this Court concludes that the trial court's decision to admit the evidence under MRE 404(b) was within the range of principled outcomes and not an abuse of discretion.[6]

---

[6] We end our analysis of this issue here with the discussion of the MRE 404(b) evidence and decline to address whether the other acts evidence is also admissible under MCL 768.27a as evidence of an offense listed under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*. The trial court decided the issue solely on the basis of the MRE 404(b) analysis and did not make any determinations regarding the effect of MCL 768.27a. Thus, arguments pertaining to the application of MCL 768.27a are not preserved for this Court's review. Furthermore, it is not necessary to the resolution of the issue on appeal by virtue of our MRE 404(b) analysis. We make no statement of whether the other acts evidence would have been alternatively or additionally admissible under the provisions of MCL 768.27a.

V

Next, defendant argues that his conviction for first-degree criminal sexual conduct must be vacated because there was a violation of due process guarantees when the trial court instructed the jury that mere touching could be sufficient to support a guilty verdict and when the jury was not instructed on which act was proven beyond a reasonable doubt. He further asserts that defense counsel was ineffective by failing to request the unanimity instruction. The prosecutor responds that the jury instructions make clear that the prosecutor must demonstrate entry into defendant's mouth by the victim's penis and asserts that no error occurred. Issues of law arising from jury instructions are reviewed de novo on appeal, but a trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Jury instructions are to be read as a whole rather than extracted piecemeal to establish error. *People v Aldrich*, 246 Mich App 101, 124; 631 NW2d 67 (2001). The reviewing court must balance the general tenor of the instructions in their entirety against the potentially misleading effect of a single isolated sentence. *People v Freedland*, 178 Mich App 761, 766; 444 NW2d 250 (1989).

Over defense counsel's objection, the trial court read the following jury instruction on the elements of first-degree criminal sexual conduct:

> The Defendant is charged with the crime of first-degree criminal sexual conduct. To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the Defendant engaged in a sexual act that involved entry into Defendant's mouth by [K's] penis. Any entry, no matter how slight, is enough. It

does not matter whether the sexual act was completed or whether semen was ejaculated and/or the Prosecutor must prove beyond a reasonable doubt the touching of [K's] genital organs with the Defendant's mouth or tongue. Second, that the alleged sexual act occurred under circumstances that also involved child sexually abusive activity, production.

A trial judge must instruct the jury as to the applicable law, and fully and fairly present the case to the jury in an understandable manner. *McGhee, supra* at 606; *People v Moore,* 189 Mich App 315, 319; 472 NW2d 1 (1991). To prove CSC I under MCL 750.520b(1)(a), the prosecution was required to show that defendant engaged in sexual penetration with another person under the age of thirteen. "Sexual penetration" means "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." MCL 750.520a(r). "Fellatio" is not defined in the statute, but this Court has interpreted the act of fellatio to require the entry of a penis into another person's mouth. *People v Reid,* 233 Mich App 457, 480; 592 NW2d 767 (1999). The *Reid* Court interpreted fellatio not to consist of merely any oral contact with the male genitals. *Id.* (" '[F]ellatio' does not consist merely of 'any oral contact with the male genitals,' but rather requires entry of a penis into another person's mouth.") (emphasis and citation omitted).

The prosecutor urges that *Reid* must be overruled because its interpretation of fellatio is inconsistent with the plain language of the statute. We agree that the *Reid* Court's interpretation of fellatio is fundamentally flawed and contrary to the plain language of the statute. Again, if the plain language of the statute is clear and

unambiguous, no further construction is necessary, and this Court must enforce the statute as written. *Borchard-Ruhland, supra* at 284. Because "fellatio" is not defined in the statute, this Court may look to a dictionary definition. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 427; 751 NW2d 8 (2008). *Random House Webster's College Dictionary* (1997), p 478, defines "fellatio" as "oral stimulation of the penis."

In this case, the prosecutor has provided three photographs that were shown to the jury during trial. We have viewed the photographs and one of them shows an image of what is alleged to be defendant's face perpendicular to the victim's penis with his tongue out of his mouth in contact with the victim's penis. We conclude on the basis of the image in the photograph that defendant was indeed orally stimulating the victim's penis with his tongue. Therefore, under the dictionary definition, what is depicted in the photograph would constitute fellatio. However, what is depicted in the photograph would not constitute fellatio as interpreted by this Court in *Reid, supra* at 480. We conclude that the definition of "fellatio" as adopted by *Reid* is incorrect because it ignores the plain meaning of the term and therefore the language of the statute. That being said, this Court is bound by its own decision in *Reid*, by virtue of MCR 7.215(J)(1).[7]

However, this issue may be decided more simply when considering that two other photographs depicting fellatio were shown to the jury at trial. We have reviewed the photographs. Both of the other photographs show images depicting defendant with his mouth open

---

[7] While it is tempting to utilize MCR 7.215(J)(2) to call for a conflict resolution panel in an effort to critique the reasoning in *Reid*, defining "fellatio," considering the fact that doing so is not at all necessary to the holding in this case, we decline to do so.

and the victim's penis inside defendant's mouth. The pictures clearly depict fellatio as interpreted by *Reid*. *Reid, supra* at 480. Even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007). The instructions must include all the elements of the crime charged and any material issues, defenses, and theories for which there is supporting evidence. *McGhee, supra* at 606. Given the photographic evidence admitted in this case, the trial court's use of the phrase "touching of [the victim's] genital organs with Defendant's mouth or tongue" in instructing the jury does not defeat the required showing of penetration, when the trial court also instructed that fellatio required "entry into Defendant's mouth by [the victim's] penis." Again, when reviewing a trial court's jury instructions, this Court must look at the instructions as a whole, rather than the potentially misleading effect of a single isolated sentence. *Aldrich, supra* at 124. Even if somewhat imperfect, instructions do not create error if they fairly present the issues to be tried and sufficiently protect the defendant's rights. *Id.* We conclude that while somewhat imperfect, the jury instructions make clear that the prosecutor must demonstrate entry into defendant's mouth by the victim's penis and, as a result, fairly presented the issues to be tried and sufficiently protected defendant's rights. *Id.* We find no error.

Defendant also argues that the trial court erred by failing to give a specific unanimity instruction and that his attorney was ineffective for failing to request one. Because defendant failed to request a special unanimity instruction, or challenge the trial court's failure to give such an instruction, this issue is unpreserved. Thus, our review is limited to plain

error affecting defendant's substantial rights. *Knox, supra* at 508. "A defendant has the right to a unanimous verdict and it is the duty of the trial court to properly instruct the jury on this unanimity requirement." *People v Martin,* 271 Mich App 280, 338; 721 NW2d 815 (2006). In this case, the trial court gave a general unanimity instruction, which is usually sufficient. *Id.* But as further explained in *Martin,*

> the trial court must give a specific unanimity instruction where the state offers evidence of alternative acts allegedly committed by the defendant and "1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." [*Id.,* quoting *People v Cooks,* 446 Mich 503, 524; 521 NW2d 275 (1994).]

Defendant does not provide any factual or legal basis to show why a general unanimity instruction was insufficient in this case. We cannot analyze what defendant has not presented. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow." *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959). Without defendant's explaining his argument, this Court must conclude that the general unanimity instruction was sufficient. *Martin, supra* at 338. Similarly, defendant has provided no basis for his ineffective assistance of counsel claim that was based on this issue. Defendant has not shown error.

VI

Defendant argues that he is entitled to resentencing because the trial court misscored offense variables (OV) 4, 9, 10, and 12. Defendant also argues that he is entitled to resentencing on counts 2 through 9 because his sentences amounted to an upward departure unsupported by substantial and compelling reasons. The prosecutor responds that the trial court scored the offense variables consistent with the evidence introduced at trial and did not abuse its discretion during sentencing. Preserved scoring issues are reviewed "to determine whether the trial court properly exercised its discretion and whether the record evidence adequately supports a particular score." *People v McLaughlin*, 258 Mich App 635, 671; 672 NW2d 860 (2003). Defendant preserved this issue by objecting to the scoring of Offense Variables 4, 9, 10, and 12 in the trial court.

Generally, the application of statutory sentencing guidelines is reviewed de novo. *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). The sentencing court has discretion in determining the number of points to be scored provided that there is evidence on the record that adequately supports a particular score, *People v Hornsby*, 251 Mich App 462, 468; 650 NW2d 700 (2002), and thus this Court reviews the scoring to determine whether the sentencing court properly exercised its discretion and whether the evidence adequately supported a particular score. *People v Steele*, 283 Mich App 472, 490; 769 NW2d 256 (2009). In general, "[s]coring decisions for which there is any evidence in support will be upheld." *People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006).

### A. OV 4

Defendant first argues that the 10 points scored for, MCL 777.34, OV 4 was incorrect. He argues specifically that the score is erroneous because no support exists for it in the record. OV 4 deals with the degree of psychological injury suffered by a crime victim. MCL 777.34. Ten points are properly scored when serious psychological injury requiring professional treatment occurred to a victim. *People v Hicks*, 259 Mich App 518, 535; 675 NW2d 599 (2003); MCL 777.34. The fact that professional treatment was not sought is not conclusive when scoring the variable. *People v Wilkens*, 267 Mich App 728, 740; 705 NW2d 728 (2005); MCL 777.34(2). The trial court stated as follows in regard to OV 4 during sentencing:

> It's quite clear, whether the victim has sought treatment for the injury is not conclusive and it simply says may require professional treatment. After hearing the testimony, after seeing their demeanor, after witnessing not only their testimony but also the taped statements made by them, I am confident that it would be illogical to assume that they did not suffer some type of psychological trauma and that they will continue to do so.

Defendant's argument that there is no support in the record for the scoring of 10 points is belied by the record. K testified that defendant had been a friend and a father figure to him and that defendant exploited that relationship to sexually abuse him and that he was "pretty angry" about what happened to him. K's mother also indicated that K was angry and that he had tried to block out memory of the abuse. On the basis of the testimony and the trial court's observations, the trial court reasonably concluded that the victims suffered serious psychological injury as a result of defendant's abuse and properly scored defendant at 10 points for OV 4.

B. OV 9

Defendant argues that no points should have been scored for OV 9, MCL 777.39, because only one victim was placed in danger on the dates in question in this case. Defendant claims that the events involving K are alleged to have occurred on August 23, 2001, and there are no photos of P or M with that date. Further, defendant claims that the events involving P are alleged to have occurred on March 1, 2000, and there are no photos of K or M from that date. And finally, defendant asserts that the events involving M are alleged to have occurred on June 15, 2001, and there are no photos of K or P from that date. He states that on these dates there was only one victim and that no others were present and thus no others could have been "placed in danger of injury or loss of life as a victim." MCL 777.39(2)(a).

MCL 777.39 provides, in pertinent part:

> (1) Offense variable 9 is number of victims. Score offense variable 9 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
>
> * * *
>
> (c) There were 2 to 9 victims who were placed in danger of physical injury or death, or 4 to 19 victims who were placed in danger of property loss..........................10 points
>
> * * *
>
> (2) All of the following apply to scoring offense variable 9:
>
> (a) Count each person who was placed in danger of physical injury or loss of life or property as a victim.

In *People v Sargent*, 481 Mich 346, 351; 750 NW2d 161 (2008), our Supreme Court found that it was

improper for a trial court to score OV 9 at 10 points where the alleged second victim claimed that the defendant had sexually molested her in a separate, uncharged offense. During its discussion, the Court stated, "[W]hen scoring OV 9, only people placed in danger of injury or loss of life when the sentencing offense was committed (or, at the most, during the same criminal transaction) should be considered." *Id.* at 350. The Court noted situations where scoring for multiple victims would be appropriate even where only one conviction resulted, stating, "For example, in a robbery, the defendant may have robbed only one victim, but scoring OV 9 for multiple victims may nevertheless be appropriate if there were other individuals present at the scene of the robbery who were placed in danger of injury or loss of life." *Id.* at 350 n 2. This language was consistent with the holding in *People v Morson*, 471 Mich 248, 253, 261-262; 685 NW2d 203 (2004), where the Court held that 10 points were properly assessed under OV 9 when the defendant, who waited in a car while her friend robbed a person using a gun provided by the defendant, endangered two victims during the armed robbery, the woman who was robbed and another man standing nearby who was shot by the perpetrator. See also *id.* at 277 (YOUNG, J., concurring in part and dissenting in part).

Here, the trial court found in the instant case as follows in regard to OV 9:

> [I]t's clear to me that is [sic] doesn't matter whether the person was actually a victim, as long as there were more than one person placed in danger. At any point in time, from what I recall throughout the testimony, there was more than one person placed in danger because more than one person spent the night in the home.

While defendant attempts to make an argument that piggybacks our Supreme Court's holding in *Sargent, supra,* the facts here are substantially different from those in *Sargent.* Here, there was significant evidence that both M and P would sometimes spend the night at defendant's home with K. Simply because there are no pictures of M and P on the night that K was assaulted does not mean that they were not present and the same goes for the other victims. On the basis of the testimony, it seems more reasonable that the other boys were sleeping while defendant was assaulting his chosen victim. There was even testimony from P that he woke up one night and saw defendant kneeling down by K's bed. Clearly the record demonstrates that defendant had a choice of victims when K and his friends would stay the night at his house while sometimes watching pornography and drinking alcohol provided by defendant, and also supports the conclusion that defendant would choose a victim while the other boys were present. We conclude that the trial court properly scored defendant 10 points for OV 9 because the record supports the inference that at least two other victims were placed in danger of physical injury when the sentencing offenses were committed.

### C. OV 10

Defendant next argues regarding OV 10, MCL 777.40, that the record does not establish by a preponderance of the evidence that there was predatory conduct within the meaning of OV 10 and thus the trial court erred when it scored defendant at 15 points for exploitation of victim vulnerability because "predatory conduct" was involved.

Offense variable 10 is exploitation of a vulnerable victim. It provides for the following scoring:

> (a) Predatory conduct was involved.................15 points
>
> (b) The offender exploited a victim's physical disabil-
> ity, mental disability, youth or agedness, or a domestic
> relationship, or the offender abused his or her authority
> status ................................................................10 points
>
> (c) The offender exploited a victim by his or her differ-
> ence in size or strength, or both, or exploited a victim who
> was intoxicated, under the influence of drugs, asleep, or
> unconscious............................................................. 5 points
>
> (d) The offender did not exploit a victim's vulnerabil-
> ity ...................................................................... 0 points

"[T]o be considered predatory, the conduct must have occurred before the commission of the offense." *People v Cannon*, 481 Mich 152, 160; 749 NW2d 257 (2008). "In addition, preoffense conduct must have been directed at a victim 'for the primary purpose of victimization.' " *Id.* at 161, quoting MCL 777.40(3)(a). Our Supreme Court set forth the following analytical questions to determine whether the conduct in question was predatory:

> (1) Did the offender engage in conduct before the commission of the offense?
>
> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?
>
> (3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*Id.* at 162.]

"If the court can answer all these questions affirmatively, then it may properly assess 15 points for OV 10 . . . ." *Id.*

The trial court stated as follows when it found predatory conduct and assessed defendant the maximum of 15 points:

> Predatory conduct is an offender's pre-offense conduct directed at a victim for the primary purpose of victimiza-

tion [MCL 777.40(3)(a)]. As indicated by the Prosecutor, this trial transcript is replete with Defendant's continued predatory conduct in establishing a long-term relationship with these young men, a relationship wherein they looked at him as kind of a big brother, kind of like the mature adult, somebody that they could go to, somebody that allowed them to behave in whatever manner they wanted to while they were in him home, because he didn't have any restrictions while they were in his home. They were allowed, even though they testified they didn't overindulge, they were allowed to drink, they were allowed to smoke, they were allowed to do whatever they wanted to. Hence, he established a predatory conduct as defined by the statute.

We completely agree with the trial court's assessment of the evidence showing predatory conduct. We further point out that defendant befriended the victims and became a confidant to them so he could easily lure the victims to his home. Then while there, he further engaged in preoffense conduct by providing a place with completely no restrictions, including providing them with video games, alcohol, cigarettes, and pornography. Defendant engaged in this course of conduct with the specific nefarious intent of being able to be alone with the victims so he could molest or victimize them without the fear of another adult discovering his behavior. The record supports the trial court's scoring of OV 10 at 15 points.

### D. OV 12

Defendant argues regarding OV 12, MCL 777.42, that he should have been scored at zero because the prosecutor made no showing that three or more contemporaneous felonious criminal acts involving crimes against a person were committed within the date of the highest offense for which defendant was convicted, the

first-degree CSC against K. The trial court may score points, from a minimum of one to a maximum of 25, for OV 12 if the defendant committed felonious criminal acts contemporaneously with the sentencing offense. MCL 777.42(1). A contemporaneous criminal act is one that occurred within 24 hours of the sentencing offense and "has not and will not result in a separate conviction." MCL 777.42(2)(a)(*ii*). If three or more contemporaneous felonious criminal acts involving crimes against a person were committed, the trial court properly scores 25 points. MCL 777.42(1)(a).

Defendant argues that OV 12 was incorrectly scored because there was no evidence that he committed three or more crimes against a person within 24 hours of his sexually penetrating K. But, as the prosecutor argued below and on appeal, the evidence demonstrates that defendant took numerous sexually explicit pictures of victims K, M, and P, and that he took those pictures around the same time that he sexually penetrated K. Critically important is the fact that defendant was in possession of those child sexually explicit materials at the time and place where he committed CSC-I against K. In order to have created those pictures, he had to have possessed them and he was never charged as a result of the possession. There was ample evidence to support scoring 25 points.

### E. ALLEGED UPWARD DEPARTURE

In his brief on appeal, defendant argues exactly as follows:

> Assuming (for the sake of argument only) that Mr. Waclawski's Prior Record Variables and Offense Variables would have been scored as set forth [in his argument,] his sentences on those counts amount to an upward departure.

Because we have found no scoring error, defendant's argument here is wholly without merit because no upward departure occurred.

## VII

Defendant argues that he is entitled to jail credit for the time served in an Illinois jail from April 2006 through October 2006 because of the excessive delay in returning him to Michigan. He claims that he was incarcerated pursuant to the IAD while awaiting extradition. The question whether defendant is entitled to sentence credit pursuant to MCL 769.11b for time served in jail before sentencing is an issue of law that we review de novo. *People v Givans,* 227 Mich App 113, 124; 575 NW2d 84 (1997). MCL 769.11b provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in jail prior to sentencing.

Defendant's argument fails because the sentencing credit statute specifically provides that a defendant is entitled to credit for time served "for the offense of which he is convicted . . . ." MCL 769.11b; see *People v Adkins,* 433 Mich 732, 750; 449 NW2d 400 (1989). While defendant characterizes his time spent in the Illinois jail as time awaiting extradition on the Michigan charges, he ignores the fact that he was actually serving time in Illinois because he was convicted of a felony in Illinois and was serving his term of incarceration for that felony. The statute is plain and he is not entitled to relief.

VIII

Defendant argues that he is entitled to have his presentence investigation report (PSIR) amended because the trial court did not adequately resolve his challenges at sentencing. Defendant objected to the probation agent's reference to defendant's being "uncooperative" and statement that defendant refused to answer questions that he did not find relevant in light of his appeal. Defendant also objected to the PSIR's inclusion of "victim" impact statements from the mothers of the complaining witnesses. The trial court's response to a claim of inaccuracies in the presentence investigation report is reviewed for an abuse of discretion. *Uphaus (On Remand), supra* at 181. A court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes. *Id.*

Because the Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR, the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information. *Uphaus (On Remand), supra* at 182. At sentencing, either party may challenge the accuracy or relevancy of any information contained in the presentence report. MCL 771.14(6); MCR 6.425(E)(1)(b); *People v Lloyd*, 284 Mich App 703, 705-706; 774 NW2d 347 (2009). The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge, but upon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge. *People v Grant*, 455 Mich 221, 233-234; 565 NW2d 389 (1997); *Lloyd, supra* at 705. When the accuracy of the presentence report is challenged, the trial court must allow the parties to be heard and must make a finding

as to the challenge or determine that the finding is unnecessary because the court will not consider it during sentencing. MCR 6.425(E)(2). It may adjourn sentencing to permit the parties to prepare for or respond to a challenge. MCL 771.14(6); *Lloyd, supra* at 705. The grant of an additional hearing is in the sentencing court's discretion. *People v Harvey,* 146 Mich App 631, 636; 381 NW2d 779 (1985). Once a defendant effectively challenges a factual assertion, the prosecutor has the burden to prove the fact by a preponderance of the evidence. *Lloyd, supra* at 705.

Although the Michigan Rules of Evidence do not apply at a sentencing proceeding, the defendant must be afforded an adequate opportunity to rebut any matter he or she believes to be inaccurate. *Uphaus (On Remand), supra* at 183-184. If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report. MCL 771.14(6); MCR 6.425(E)(2)(a); *Lloyd, supra* at 705. When a sentencing court disregards information challenged as inaccurate, the court effectively determines that the information is irrelevant and the defendant is entitled to have the information stricken from the report. *People v Spanke,* 254 Mich App 642, 649; 658 NW2d 504 (2003). The failure to strike disregarded information can be harmless error. *People v Fisher,* 442 Mich 560, 567 n 4; 503 NW2d 50 (1993).

The sentencing record reveals that defendant objected to a statement in his PSIR that he was "uncooperative and refused to answer questions" during the PSIR interview with the probation department. At sentencing, defendant's counsel explained that defendant is a former attorney and understood his right to refuse to answer questions based on the Fifth Amend-

ment, thus he was exercising that right and was not being uncooperative. The trial court found that the statement in the PSIR was accurate because it reflected the interviewer's "genuine opinion as to how [defendant] projected himself to her in answering the questions." The trial court then stated that the "guideline range is set by the scoring, not by [the interviewer's] opinion. Her recommendation might be reflected in her opinion, but the guideline range is set by statute." Clearly the trial court allowed defendant an opportunity to challenge the accuracy of the information in the PSIR, considered it, and then rejected it because the narrative of the exchange between defendant and the probation interviewer was accurate with regard to the interviewer's impression of what transpired during the interview. The trial court further made clear that the "opinion" of the probation interviewer would not be used in the calculation of the sentences because the guideline range is what sets the sentences. The trial court did not abuse its discretion by concluding that the PSIR was accurate.

Defendant also argues that the trial court abused its discretion when it allowed the mothers of K, P, and M to give victim's impact statements and to allow references to them to be included in the PSIR. MCL 780.764 and 780.765 grant individuals who suffer direct or threatened harm as a result of a convicted individual's crime the right to submit an impact statement both at the sentencing hearing and for inclusion in the PSIR; however, the right is not limited exclusively to the defendant's direct victims. Instead, "a sentencing court is afforded broad discretion in the sources and types of information to be considered when imposing a sentence . . . ." *People v Albert*, 207 Mich App 73, 74; 523 NW2d 825 (1994). Moreover, this broad discretion does not infringe on a convicted individual's due process

rights, because the evidence was not taken into consideration in determining the defendant's guilt. See *Williams v New York*, 337 US 241, 246-247; 69 S Ct 1079; 93 L Ed 1337 (1949).

Here the trial court stated as follows in regard to defendant's objection at sentencing:

> Certainly is [sic] would have been nice to have heard from the young men themselves, but I can't find any quarrel with listening to their parents and how it has affected them, how it affected them upon their knowledge of the allegations and how it continues to affect them insofar as they may be embarrassed to come back. I have no objection or I have no problem with what is contained within the impact statement as provided by the mothers, the mother, I'm sorry. So it's going to stay.

Plainly, the law does not limit victim's impact statements to direct victims. As the trial court stated, the victims are now young men who likely suffered great embarrassment as a result of defendant's victimization of them as children. The three victims did not attend sentencing or submit victim impact statements. However, this is much more likely the result of humiliation and shame rather than, as defendant intimates, because they did not suffer injury. The decision to allow the mothers to give victim impact statements was within the trial court's discretion and the trial court did not abuse that discretion when it allowed references to the mothers' statements in the PSIR. *Albert, supra* at 74-75.

IX

Defendant next argues *in propria persona* that this Court must reverse defendant's convictions and suppress all the evidence because the search warrants yielding the evidence were overbroad and lacked the

particularity required for searches of an attorney's computer and computer storage media, because there was a failure to minimize the risk of intercepting evidence of unrelated noncriminal activity, and because there was a failure to incorporate search methods to protect the attorney-client privilege and attorney work product. A trial court's findings on a motion to suppress evidence as illegally seized will not be reversed on appeal unless clearly erroneous, *People v Jones*, 249 Mich App 131, 135; 640 NW2d 898 (2002); *People v Toodle*, 155 Mich App 539, 543; 400 NW2d 670 (1986), while questions of law and the decision on the motion are reviewed de novo, *Jones*, *supra* at 135. A finding is clearly erroneous when it leaves this Court with a definite and firm conviction that the trial court made a mistake. *People v Hahn*, 183 Mich App 465, 469; 455 NW2d 310 (1989), vacated in part and remanded 437 Mich 867 (1990); *Toodle*, *supra* at 543.

While defendant presents a long and circuitous argument regarding many aspects of the government's search of his computers and computer storage media that is based on the allegation that because he is an attorney and those items contained files that were clearly attorney work product they could not be searched, this issue boils down into a simple matter. This Court explained in *Ravary v Reed*, 163 Mich App 447, 453; 415 NW2d 240 (1987):

> The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation. *Alderman v The People*, 4 Mich 414, 422 (1857), *Kubiak v Hurr*, 143 Mich App 465, 472-473; 372 NW2d 341 (1985). The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed. *Id.*, 473. The privilege is personal to the client,

who alone can waive it. *Passmore v Passmore's Estate,* 50 Mich 626, 627; 16 NW 170 (1883).

And furthermore, "[i]t is well settled that the attorney-client privilege belongs to the client and not to the attorney." *People v Bortnik,* 28 Mich App 198, 201; 184 NW2d 275 (1970). As such, defendant may not assert a privilege that is not his to assert. The privilege belonged only to his former clients and not to defendant.

In any event, defendant presents no evidence that the government even reviewed any work-related documents that he claims are on his computers (including the digital camera) and computer storage media. At the hearing on this matter, the trial court asked the prosecutor if she acquired any information from defendant's computers or computer storage media that was not directly relevant to the charges in the complaint against defendant. The prosecutor responded in the negative and stated that defendant had "an opportunity to review all of the materials that are considered evidentiary in this case." She further stated that the materials did not include anything relating to an attorney/client privilege. The prosecutor also stated that the forensic examination of defendant's computers and computer storage materials "would have to be very specific and very careful according to the keyword searches of the relevant evidence in this case. And again there's no indication that [the forensic examiner's search] in this case did, in fact[,] touch upon any attorney/client product or work product." The prosecutor further elaborated:

> [T]he search warrants in this case were, were not applied for by me, I did review them and they were adequately specific in this case in that the search warrants, the property to be seized were documents and records pertaining to child sexually abusive material. Not an over-

all, open search of every [sic] filed on Defendant's computer. That's not what was granted here, that's not what was conducted here. And based upon my conversations with Sergeant [Rebecca] MacArthur and the fact that she is an experienced computer forensic examiner and, and experienced in the search and seizure of computers, she was well aware too of the potential impact of the Defendant being a, and [sic] attorney in this case. And based upon those facts, that's why she conducted a limited review of the material, related only to the property to be seized in this case, which [were] documents or records relating to child sexually abusive material.

The trial court also stated that it would not "allow anything about any client that he may have represented to come out during this trial."

At trial, nothing from defendant's computers or computer storage media was used in evidence other than child pornography that was found by the Michigan State Police (MSP) computer forensic examiner, Detective Rebecca MacArthur. Detective MacArthur testified at trial that she has had over 800 hours training in computer forensics. She testified that she used specialized forensic software programs ("Forensic Tool Kit" and "Encase") through an approved computer forensics protocol to analyze defendant's computers and computer storage media. She stated that she searched defendant's computers and storage media only for evidence relevant to the investigation, specifically files containing child pornography. She stated that there is a graphics viewer feature in both programs that allowed her to view any pictures present and then she scrolled through the pictures and bookmarked child pornography images she found. Detective MacArthur found several thousand images of child pornography but only flagged several hundred of them because their data indicated that they may have been taken with a digital camera. Then she narrowed down the pool to 32 images

because their raw data indicated that they were taken with defendant's digital camera with embedded dates and times in the image data.

Defendant has not pointed to, and we have not found, an instance where a single file unrelated to child pornography was revealed to the jury or was used in any way at trial. Further, defendant has not provided any evidence that the MSP or the prosecutor examined or acquired any file from his computers or computer storage media that was unrelated to the prosecution of this case to indicate that their search was in error or overbroad. And finally, to the extent that defendant argues that any files present on his computers or computer storage media are protected by the attorney-client privilege, that argument also fails because the privilege is not his to assert. Defendant has not established error.

X

Defendant's next argument *in propria persona* is that this Court must reverse his convictions and suppress all evidence because the search warrants yielding the evidence failed to set standards by which the government could distinguish between relevant and nonrelevant files, because there were no measures to reduce the interception of evidence of noncriminal activity unrelated to the investigation, and because the government conducted a general, exploratory search of the computers and storage media.

This issue basically reargues the same issues defendant raised in the previous issue. Defendant urges this Court to believe that the government engaged in an overbroad and unfettered search of his personal and work files on his computers and computer storage media that were intermingled with files relevant to his

prosecution. Defendant continues to assert that he has special privileges as an attorney who possessed computer files that were subject to the attorney-client privilege. For these reasons, defendant asserts that the search of his computers and computer storage media was improper and that all evidence seized must be suppressed.

But as we outlined in our discussion of the previous issue, defendant has presented no evidence that the police or prosecutor engaged in an unlawful overbroad search of his computer materials. Instead, the evidence shows that the government, through an MSP computer forensic examiner, engaged in a very specific, limited search of defendant's computers and computer storage media utilizing specialized search tools to identify only those files relevant to the criminal charges brought against defendant. In fact, at trial, testimony showed that only those files that contained images of child pornography were even viewed by the forensic examiner. Because defendant has presented no evidence to the contrary, defendant has not shown that this matter should be remanded for an evidentiary hearing as defendant requests, or that the search was improper and the evidence seized should be suppressed.

XI

Defendant argues *in propria persona* that the search warrants dated March 20, 2006, March 31, 2006, May 12, 2006, and February 5, 2007, must be quashed and the fruits of the searches suppressed. A search warrant may not be issued unless probable cause exists to justify the search. US Const, Am IV; Const 1963, art 1, § 11; MCL 780.651; *People v Sloan*, 450 Mich 160, 166-167; 538 NW2d 380 (1995), overruled in part on other grounds in *People v Wager*, 460 Mich 118; 123-124

(1999), and overruled in part on other grounds in *People v Hawkins*, 468 Mich 488; 502 (2003); *Martin, supra* at 298. Probable cause exists when the facts and circumstances would allow a reasonable person to believe that the evidence of a crime or contraband sought is in the stated place. *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000); *People v Osantowski*, 274 Mich App 593, 615; 736 NW2d 289 (2007), rev'd in part and remanded on other grounds 481 Mich 103 (2008).

Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation. *Sloan, supra* at 167-168; *People v Mitchell*, 428 Mich 364, 367; 408 NW2d 798 (1987). When probable cause is averred in an affidavit, the affidavit must contain facts within the knowledge of the affiant rather than mere conclusions or beliefs. The affiant may not draw his or her own inferences, but must state the matters that justify the drawing of inferences. *Sloan, supra* at 168-169; *Martin, supra* at 298. However, the affiant's experience is relevant to the establishment of probable cause. *People v Darwich*, 226 Mich App 635, 639; 575 NW2d 44 (1997). The affidavit should be signed by the affiant. A warrant based upon an unsigned affidavit is presumed to be invalid, but the prosecutor may rebut the presumption by showing that the affidavit was made on oath to a magistrate. *Mitchell, supra* at 369; *People v Tice*, 220 Mich App 47, 52; 558 NW2d 245 (1996).

Defendant asserts that this Court must quash the March 20, 2006, search warrant, and suppress all fruits of the search, because the search warrant was obtained with impermissible police hearsay and was obtained with an invalid, unsigned affidavit, and because the invalid, unsigned affidavit was not before the court issuing the search warrant, and, therefore, the search

warrant was issued without probable cause. We conclude that all these challenges are baseless.

In *People v Sellars*, 153 Mich App 22, 27; 394 NW2d 133 (1986), this Court observed:

> [A] warrant may issue on probable cause if the police have conducted an independent investigation to confirm the accuracy and reliability of the information regardless of the knowledge and reliability of the source. This rule is clearly set forth in both federal and state Supreme Court decisions.

See also *People v Harris*, 191 Mich App 422, 425-426; 479 NW2d 6 (1991) (recognizing that a search warrant may be issued on the basis of an affidavit that contains hearsay as long as the police have conducted an independent investigation to verify the information).

In this case, defendant has not demonstrated error with regard to police hearsay. The record clearly establishes that the facts stated in the affidavit were confirmed by independent police investigation. *Sellars, supra* at 27. Detective Elizabeth Egerer stated that she received a complaint from the Illinois Crimes Against Children Unit. Detective Egerer communicated personally with Illinois Detective Andrew Uhlir, confirming the information in the complaint regarding defendant's trip to Illinois and his admission to the police that the reason for the trip was to engage in sexual activities with a perceived minor named "Coty" whom he had been chatting with on the Internet. Moreover, viewing the affidavit in a common-sensical and realistic manner, a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause to issue a search warrant. *People v Keller*, 479 Mich 467, 477; 739 NW2d 505 (2007); *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000). Further, the record reveals that Detective Egerer appeared be-

fore the magistrate on March 20, 2006, and swore or affirmed the accuracy of her affidavit. Police officers are presumptively reliable, and self-authenticating details also establish reliability. *People v Ulman*, 244 Mich App 500, 509; 625 NW2d 429 (2001); *People v Powell*, 201 Mich App 516, 523; 506 NW2d 894 (1993).

Defendant next argues with regard to the March 20, 2006, affidavit that it must be deemed invalid because there was no "search warrant from Illinois" in existence on March 20, 2006, because the Illinois search warrant was not in existence until it was signed by a judge on March 23, 2006. This Court cannot confirm this assertion in the lower court record. However, the record does reveal that on the Affidavit for Search Warrant, at item 2, Detective Egerer, the affiant, represents that an Illinois search warrant is attached to her affidavit. At item 2, it states, in part, "See attachment 1, the search warrant from Illinois, for more details." The copy of the affidavit we used for review of this issue is attached to defendant's Standard 4 brief on appeal. This exhibit does not have an "attachment 1." However, we find no error because even if the attachment was not present on March 20, 2006, when Detective Egerer went before the magistrate, the magistrate stated specifically on the record that "[b]ased on the Affidavit for the search warrant, pages one through three, the Court will find probable cause to issue . . . the search warrant based on the Affidavit." Clearly, the magistrate considered only the three-page affidavit before it and found probable cause without the attachment. Again, when viewing the three-page affidavit alone in a common-sensical and realistic manner, a reasonably cautious person could have concluded that there was a substantial basis for the finding of probable cause to issue a search warrant. *Keller, supra* at 477; *Whitfield, supra* at 446. Defendant has not shown error.

Defendant asserts that this is not a situation where Detective Egerer inadvertently failed to attach Detective Uhlir's Illinois search warrant to her March 20, 2006, affidavit for a search warrant, instead, she did not have the Illinois search warrant and misrepresented herself. A defendant has the right to challenge the truthfulness of an affidavit's factual statements, but under a difficult standard:

> "There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." [*People v Turner*, 155 Mich App 222, 226-227; 399 NW2d 477 (1986), quoting *Franks v Delaware*, 438 US 154, 171; 98 S Ct 2674, 2684; 57 L Ed 2d 667 (1978).]

The defendant has the burden of showing, by a preponderance of the evidence, that the affiant knowingly and intentionally, or with a reckless disregard for the truth, inserted false material into the affidavit and that the false material was necessary to the finding of probable cause. *People v Williams*, 240 Mich App 316, 319-320; 614 NW2d 647 (2000). On this record, defendant has not made this showing and, as such, has not established error with regard to the March 20, 2006, affidavit or search warrant.

Defendant's sole argument regarding the March 31, 2006, and May 12, 2006, search warrants is that they must be quashed and the fruit of the searches suppressed because they were issued following the illegal searches of defendant's home and home office on March 20, 2006. Because defendant has not established error with regard to the March 20, 2006, search, this argument fails.

Defendant also argues that the February 5, 2007, search warrant must be quashed and the fruit of its search suppressed because the February 5, 2007, search warrant was issued following illegal searches of defendant's home and home office on March 20, 2006, and March 31, 2006. Again, this argument fails because defendant has not established error with regard to the March 20, 2006, search.

Defendant also argues that the evidence revealed as a result of the search of his digital camera should have been suppressed because it was obtained by the government in violation of two court orders. Defendant contends that the Illinois court issued two orders both dated July 23, 2006. He asserts that the first order indicated that "Evidence shall be preserved until further order of the court." And he states that the second order pertained to defendant's personal property then in Illinois and required that any property not being held as evidence was to be returned to defendant's attorney. He urges this Court that an evidentiary hearing would have shown that the camera was in Illinois and that Detective Uhlir brought the digital camera from Illinois and gave it to Detective MacArthur in Michigan and that no Michigan magistrate would have issued the February 5, 2007, search warrant had the government revealed that the property to be seized was then in Illinois and under the jurisdiction of an Illinois court.

We find no substance to this argument. The February 5, 2007, search warrant pertaining to defendant's Kodak DC3400 Digital Camera, his suitcase, and other personal items including a shaving kit, a Samsung/Verizon cellular phone, clothes, and a personal planner clearly shows that the property was located at the "Wheaton Police Department, 900 W. Liberty Drive, Wheaton, IL, 60187." The search warrant was plain that the items to be searched were located in Illinois and were presumably there as a result of defendant's Illinois arrest, conviction, and incarceration. Defendant has not shown error.

XII

Defendant next contends in his Standard 4 brief on appeal that this Court must dismiss the charges against defendant on the basis that jurisdiction was lost because of the failure of the prosecutor to timely file an information and because the IAD mandates dismissal with prejudice of untried charges. Interpretation of a court rule presents a question of law that we review de novo. *Waatti & Sons Electric Co v Dehko,* 230 Mich App 582, 586; 584 NW2d 372 (1998).

At a hearing a little over a week before trial, defendant's attorney informed the trial court and the prosecutor that he had looked over the court docket entries the night before and noticed that an original felony information apparently had not been filed with the circuit court. The trial court had recently ordered the prosecutor to file an amended felony information with the circuit court and therefore, defendant's attorney argued twofold: (1) that the circuit court did not have jurisdiction over defendant as a result of the alleged nonfiling and (2) that the prosecutor should not be allowed to file an amended information without an original first being filed. The trial

court heard argument on the issues, inspected the court file, inspected the docket entries, spoke with the court clerk, and discussed the issues with counsel. The prosecutor stated that she had an information dated December 18, 2006, but it was not time-stamped as having been received by the circuit court. The trial court stated that there was no information dated December 18, 2006, in the trial court file. The trial court then made observations that it could have been lost between the district court and the circuit court or it could have been lost between the circuit court and the Court of Appeals during the interlocutory appeal. The trial court reviewed the file and determined that defendant had clearly been arraigned on the charges in circuit court and that at defendant's arraignment he waived the reading of the information. The trial court found that that being the case, defendant had waived any assignment of error in regard to the information. The trial court then accepted the prosecutor's amended information into the court record on that date. On appeal, defendant points out that although he waived reading of the information at the arraignment, he did not waive the actual filing of an information.

The purpose of an arraignment is to provide formal notice of the charge against the accused. *People v Thomason*, 173 Mich App 812, 815; 434 NW2d 456 (1988), citing *People v Killebrew*, 16 Mich App 624, 627; 168 NW2d 423 (1969). At an arraignment, the information is read to the accused and the accused may enter a plea to those charges. *Thomason*, *supra* at 815, citing former MCR 6.101(D)(1). The accused may waive the reading of the formal charges at the arraignment. *Id.* The record is clear that defendant waived formal reading of the charges at his arraignment and stood mute. The circuit court entered a plea of not guilty on defendant's behalf.

From the discussion that took place on the record on April 29, 2008, it appears to this Court that an original felony information was not filed by the prosecutor in this case. There was no record of it in the lower court file and the docket entries did not indicate that one had ever been filed. MCR 6.112 governs the information or indictment and provides as follows:

> (A) Informations and Indictments; Similar Treatment. Except as otherwise provided in these rules or elsewhere, the law and rules that apply to informations and prosecutions on informations apply to indictments and prosecutions on indictments.
>
> (B) Use of Information or Indictment. A prosecution must be based on an information or an indictment. Unless the defendant is a fugitive from justice, the prosecutor may not file an information until the defendant has had or waives a preliminary examination. An indictment is returned and filed without a preliminary examination. When this occurs, the indictment shall commence judicial proceedings.
>
> (C) Time of Filing Information or Indictment. The prosecutor must file the information or indictment on or before the date set for the arraignment.
>
> (D) Information; Nature and Contents; Attachments. The information must set forth the substance of the accusation against the defendant and the name, statutory citation, and penalty of the offense allegedly committed. If applicable, the information must also set forth the notice required by MCL 767.45, and the defendant's Michigan driver's license number. To the extent possible, the information should specify the time and place of the alleged offense. Allegations relating to conduct, the method of committing the offense, mental state, and the consequences of conduct may be stated in the alternative. A list of all witnesses known to the prosecutor who may be called at trial and all res gestae witnesses known to the prosecutor or investigating law enforcement officers must be attached to the information. A prosecutor must sign the information.

(E) Bill of Particulars. The court, on motion, may order the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense.

(F) Notice of Intent to Seek Enhanced Sentence. A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

(G) Harmless Error. Absent a timely objection and a showing of prejudice, a court may not dismiss an information or reverse a conviction because of an untimely filing or because of an incorrectly cited statute or a variance between the information and proof regarding time, place, the manner in which the offense was committed, or other factual detail relating to the alleged offense. This provision does not apply to the untimely filing of a notice of intent to seek an enhanced sentence.

(H) Amendment of Information. The court before, during, or after trial may permit the prosecutor to amend the information unless the proposed amendment would unfairly surprise or prejudice the defendant. On motion, the court must strike unnecessary allegations from the information.

The information duly notifies a defendant of the charges instituted against the defendant and further eradicates double jeopardy issues in the event of a retrial. *People v Traughber*, 432 Mich 208, 215; 439 NW2d 231 (1989). The dispositive question in determining whether a defendant was prejudiced by a defect in the information is whether the defendant knew the acts for which he or she was being tried so that he or she could adequately put forth a defense. *Id.* Given that it appears the prosecution violated MCR 6.112(C), the

issue is whether the harmless error provision of MCR 6.112(G) requires dismissal.

MCR 6.112(G) places the burden on defendant to demonstrate prejudice and thus establish that the error was not harmless. In this case defendant cannot show that he was prejudiced because he clearly knew the charges against him and, as an attorney, heavily participated in his own defense including preparing his case for trial. The file contains a felony complaint dated May 23, 2006, as well as a bindover dated December 11, 2006, that clearly set out the charges against defendant. Defendant does not claim that he did not have access to the felony complaint or bindover form or that he was not aware or able to defend against the charges against him. Further, there was argument before the circuit court where defendant was successful in getting three CSC-I charges he was facing reduced to one charge of CSC-I before trial. Defendant did not raise this issue until about one week before trial. There is absolutely no indication that defendant was not aware of the charges upon which he would stand trial. Because MCR 6.112(G) precludes dismissal "[a]bsent . . . a showing of prejudice," and defendant has not made that initial showing, the trial court did not err by failing to dismiss the case.

While defendant characterizes this issue as one of jurisdiction, in order to attempt to invoke the protections of the IAD and have all the charges against him dropped as a result of the IAD, he ignores the proper analysis under MCR 6.112(G) regarding whether he was prejudiced. He was not. The prosecutor did file an information on the date she became aware of the issue and there was no error in the court's accepting it because this Court has held that time is not of the essence, nor is it a material element, in a criminal

sexual conduct case, at least where the victim is a child. *People v Stricklin*, 162 Mich App 623, 634; 413 NW2d 457 (1987). To the extent defendant argues that he received ineffective assistance of counsel because his first two attorneys failed to point out this issue, defendant's argument fails because he has not shown prejudice pursuant to MCR 6.112(G). Thus, defendant is not entitled to relief.

XIII

In his final argument *in propria persona*, defendant argues that this Court must reverse his convictions and bar retrial because a police witness interjected irrelevant and extremely inflammatory testimony, the interjection was not innocent and was within the control of the prosecution, and the trial court failed to immediately strike the testimony and issue a cautionary instruction to the jury. This Court reviews for an abuse of discretion a trial court's ruling whether to grant a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant "and impairs his ability to get a fair trial." *People v Bauder*, 269 Mich App 174, 195; 712 NW2d 506 (2005) (quotation marks and citation omitted). "A trial court abuses its discretion when it fails to select a principled outcome." *People v Horn*, 279 Mich App 31, 35 n 1; 755 NW2d 212 (2008).

At the time the police searched defendant's home on March 20, 2006, they found and seized a small amount of suspected marijuana. Defendant brought a pretrial motion to suppress the evidence and the trial court ruled that a complainant must first testify that he was given marijuana by defendant before a police officer would be permitted to testify with regard to the search

results at trial. At trial, while discussing the search of defendant's home, the following exchange occurred between the prosecutor and Detective Egerer:

> *The Prosecutor*: Okay, and once you seized those CDs, was there anything else of evidentiary value that you found in the house?
>
> *Detective Egerer*: We did also seize a small baggy of suspected marijuana out of the Defendant's bedroom.

Defendant immediately asked for the jury to be removed from the courtroom. The trial court then excused the jury and defendant moved for a mistrial. The trial court denied the motion, instead finding that a curative instruction at the end of trial would be sufficient to cure any error. The trial court admonished the prosecutor for failing to properly prepare the witness not to mention the marijuana and instructed the prosecutor not to mention it again before the jury. The trial court instructed defense counsel to prepare a curative instruction for its review. The jury returned and there was no further mention of the suspected marijuana. After the close of the proofs, the trial court instructed the jury and did provide an instruction regarding the suspected marijuana testimony. It was as follows:

> The Prosecution presented evidence that suspected marijuana was found in the home of the Defendant. Mr. Waclawski is not charged with possession of marijuana in this case. You must not consider this evidence in any way in arriving at your verdict.

Although the challenged portion of Detective Egerer's testimony went beyond the scope of the prosecutor's questioning, it constituted an isolated comment that was not repeated or explored further. In *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds by *People v Thompson*,

477 Mich 146, 148 (2007), this Court discussed unresponsive testimony, stating, in relevant part:

> [N]ot every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial. [Quotation marks and citation omitted.]

As such, Detective Egerer's "unresponsive, volunteered" testimony did not constitute error that impaired defendant's ability to get a fair trial. *Bauder, supra* at 195. Furthermore, the trial court provided a comprehensive curative instruction to the jury. Because jurors are presumed to follow the instructions given, *People v Rodgers*, 248 Mich App 702, 717; 645 NW2d 294 (2001), the curative instruction alleviated any possible prejudice to defendant. *People v Messenger*, 221 Mich App 171, 180; 561 NW2d 463 (1997). Thus, the trial court did not abuse its discretion when it denied defendant's request for a mistrial.

Affirmed.