# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ARSHAD HAMZA ALJAMAILAWI,

       Defendant-Appellant.

UNPUBLISHED
December 18, 2018

No. 339053
Macomb Circuit Court
LC No. 2016-001685-FH

Before: M. J. KELLY, P.J., and METER and O'BRIEN, JJ.

PER CURIAM.

Defendant, Arshad Aljamailawi, appeals as of right his jury trial convictions of assault with a dangerous weapon, MCL 750.82, and prisoner in possession of a weapon, MCL 800.283(4). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

On November 30, 2014, a corrections officer at the Macomb Correctional Facility observed a commotion outside a day room. On investigation, he saw two prisoners standing face-to-face. One of the prisoners lunged forward making a punching or striking motion with his arm. The corrections officer identified that prisoner as Aljamailawi, and he testified that the other prisoner was bleeding. The officer yelled for Aljamailawi to stop. He observed that Aljamailawi had "something in his hand," but he could not easily identify it. Aljamailawi dropped the item, which the corrections officer later retrieved from where Aljamailawi had been standing. The item was a "shank," a weapon made "out of material" a prisoner "can find around the prison perimeters." The corrections officer wrote a misconduct report regarding Aljamailawi, and, at a hearing on the incident, Aljamailawi did not claim a defense and pleaded guilty to possession of a weapon and assault with intent to do great bodily harm. Aljamailawi was charged with felonious assault and prisoner-in-possession, and, following a jury trial, he was convicted of both charges.

## II. SPEEDY TRIAL

### A. STANDARD OF REVIEW

Aljamailawi first argues that he was denied his constitutional right to a speedy trial because there was an approximately 29-month delay between the date of the offense and his trial.

-1-

It "is a mixed question of fact and law" whether a defendant was denied his right to a speedy trial. *People v Waclawski*, 286 Mich App 634, 664; 780 NW2d 321 (2009). "The factual findings are reviewed for clear error, while the constitutional issue is a question of law subject to review de novo." *Id*.

## B. ANALYSIS

The Michigan Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant's right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20. The United States Supreme Court has held that a defendant's Sixth Amendment right to a speedy trial attaches "when a defendant is arrested or formally accused." *Betterman v Montana*, ___ US ___, ___; 136 S Ct 1609, 1613; 194 L Ed 2d 723 (2016). The following four factors are balanced to determine whether a defendant's right to a speedy trial has been violated: "(1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *People v Williams*, 475 Mich 245, 261-262; 716 NW2d 208 (2006). If the total delay is less than 18 months, the defendant carries the burden of demonstrating prejudice. *Waclawski*, 286 Mich App at 665. Prejudice is presumed after a delay of 18 months or more, and "the burden shifts to the prosecution to show that there was no injury." *Williams*, 475 Mich at 262.

The prosecution argues that when calculating the length of the delay, this Court should only consider the length of the delay *not attributable* to Aljamailawi. In support, it relies on *People v Holtzer*, 255 Mich App 478, 492; 660 NW2d 405 (2003), where this Court stated that "if the delay not attributable to defendant exceeds eighteen months, prejudice is presumed." However, that statement in *Holtzer* was implicitly overruled by our Supreme Court in *Williams*. In that case, our Supreme Court held that the length of the delay was over 19 months, so the delay was presumptively prejudicial. *Williams*, 475 Mich at 262. In calculating the length of the delay, the *Williams* Court made no distinction between delays attributable to the defense or the prosecution. Instead, when evaluating the second factor (i.e., the reason for the delay), the Court held that the delay between July 16, 2001 and October 12, 2001—spanning approximately three months—was attributable to the defendant, but it did not subtract that three-month period from the length of the delay. See *id*.; see also *Waclawski*, 286 Mich App at 658, 665 (applying the rule from *Williams* to calculate the total length of the delay at approximately 24 months despite the fact that around 7 ½ months of the delay was attributable to the defendant). Accordingly, we conclude that to properly evaluate the first factor, a court must consider the total length of the delay without regard to the cause of the delay.

Next, we reject Aljamailawi's contention that period between when the offense occurred and the trial date constitutes the period of the delay. As explained by the United States Supreme Court, the right to a speedy trial does not attach until "a defendant is arrested or formally accused." *Betterman*, ___ US at ___; 136 S Ct at 1613. Aljamailawi was not formally accused until his arraignment, which first occurred on May 20, 2015. The prosecution voluntarily dismissed the charges on September 28, 2015. The case was reauthorized on October 1, 2015, and Aljamailawi was arraigned for a second time on April 1, 2016. Thus, contrary to Aljamailawi's argument on appeal, the date his right to a speedy trial started to run was either when he was first arraigned on May 20, 2015 or when he was arraigned for a second time on April 1, 2016.

The prosecution argues and the trial court concluded that the date of the second arraignment—April 1, 2016—was the pertinent date to start calculating the length of the delay. However, in *People v Wickham*, 200 Mich App 106, 110; 503 NW2d 701 (1993), this Court addressed a similar argument:

> The people argue that we should not consider the period between defendant's arrest and the initial dismissal without prejudice in calculating the delay in this case. See *United States v Atisha*, 804 F2d 920 (CA 6, 1986), cert den 479 US 1067 (1987). (The court considered only the constitutionality of the delay between the date the defendant was reindicted and the date he was first brought to trial.) But see *United States v Colombo*, 852 F2d 19 (CA 1, 1988), where the court distinguished between the situation where a charge is dismissed on the motion of a defendant and the situation where the government voluntarily dismisses charges. In the former situation, only the delay in the prosecution of the second indictment is relevant for Sixth Amendment purposes. In the latter situation, the time elapsed during the pendency of the first charge is not excluded. This issue has not been directly addressed by the appellate courts of this state. Although we prefer the rationale employed in *Colombo*, we need not decide the issue because we conclude that even considering the time elapsed before the initial dismissal in this case, defendant was not denied a speedy trial.

The *Colombo* Court reasoned that the accumulated time before the prosecution voluntarily dismisses charges should be considered for speedy trial purposes because, "otherwise, the [prosecution] would be able to nullify a defendant's speedy trial right by the simple expedient of dismissing and reindicting whenever speedy trial time was running out on its prosecution." *Colombo*, 852 F2d at 23-24. Applying the *Colombo* Court's rationale to this case means that Aljamailawi's right to a speedy trial attached on May 20, 2015, when he was first arraigned. Aljamailawi's trial began on May 16, 2017, which was 727 days, or 23 months and 26 days, after his first arraignment. Thus, the length of the delay in this case exceeded 18 months, so prejudice to Aljamailawi was presumed. A "presumptively prejudicial delay triggers an inquiry into the other factors to be considered in the balancing of the competing interests to determine whether a defendant has been deprived of the right to a speedy trial." *Williams*, 475 Mich at 262 (quotation marks and citation omitted).

This Court must attribute each period of delay to either defendant or the prosecution. *Waclawski*, 286 Mich App at 666. "Unexplained delays are charged against the prosecution. Scheduling delays and docket congestion are also charged against the prosecution." *Id*. (quotation marks and citation omitted). However, delays "inherent in the court system," such as scheduling delays, "are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Id*. (quotation marks and citation omitted). Additionally, delays between a dismissal without prejudice and the reinstatement of the charge

"should not be attributed to either side because there was no charge pending against defendant during" that time. *Wickham*, 200 Mich App at 111.[1]

Thus, the approximately four-month period between May 20, 2015 and September 28, 2015 should be attributed to the prosecution, as it is an unexplained delay. See *Waclawski*, 286 Mich App at 666. However, the approximately six-month period between September 28, 2015 and April 1, 2016 count against neither the prosecution nor Aljamailawi. *Wickham*, 200 Mich App at 111. Moreover, the delay between May 16, 2016 and May 16, 2017 is attributed almost solely to Aljamailawi. First, Aljamailawi requested a referral for a competency and criminal responsibility examination, which resulted in a delay from May 16, 2016 until January 20, 2017. At that time, Aljamailawi sought additional time to file a motion to quash, which he filed on January 11, 2017. Before the motion to quash was decided, on January 17, 2017, Aljamailawi filed a motion in limine to exclude certain evidence from trial. At a January 23, 2017 hearing, the defense also orally raised a due process challenge, which the court ordered briefing on. Because of the pending defense motions—some of which required supplemental briefing—and because the defense requested an additional 30 days to interview potential witnesses, the trial court rescheduled the jury trial that was scheduled for January 24, 2017. On February 23, 2017, the trial court denied the defense's motion to quash. It denied the motion in limine on March 13, 2017. Accordingly, the approximately ten-month delay between May 16, 2016 and March 13, 2017 is properly attributable to the defense, as the delays were associated with the defense motions and requests.[2]

Further, on March 6, 2017, the defense filed another motion, this time seeking dismissal on the grounds that Aljamailawi's right to a speedy trial had been violated. However, at a March 13, 2017 pretrial, the court noted that the defense's motion was deficient because it had failed to attribute the delays to either the prosecution or the defense. Accordingly, the defense requested two weeks to supplement its brief, and the prosecution sought three weeks to respond. As a result, the trial court set the trial for 60 days. Subsequently, on March 31, 2017, the trial court denied the speedy trial motion. The delay between March 13, 2017 and March 31, 2017, then, is properly attributed to Aljamailawi, as it was time spent on a defense motion. This amounts to an additional delay of approximately two weeks. Thereafter, on April 17, 2017, Aljamailawi reminded the court that it had yet to issue a ruling on his prearrest delay challenge. The court issued that ruling on May 4, 2017, which amounts to another period of approximately two weeks that is attributable to the defense.

---

[1] Delay caused by a successful interlocutory appeal is likewise not attributed to either party and is taken out of the calculation when determining the reasons for the delay. *Waclawski*, 286 Mich App at 667.

[2] There are no allegations that the time the trial court took to respond to the defense motions was excessive or unreasonable and we do not discern any undue delay in the court's response to the motions.

In sum, it appears that of the 23 months, 6 months are not counted against either the defense or the prosecution. Of the remaining 17 months, over 11 months is attributed to time spent on defense requests and motions, whereas the remaining time is attributed to the prosecution. Given that the majority of the delay is attributed to the defense, this factor weighs against Aljamailawi's claim that he was denied the right to a speedy trial.

Next, we consider that Aljamailawi did not assert his right to a speedy trial until March 6, 2017, approximately two months before trial. This amounts to an approximately 21-month delay between his first arraignment and his request for a speedy trial. A trial court is permitted to weigh the third factor of the test "heavily against defendant" for failing to raise a speedy trial issue sooner. *Williams*, 475 Mich at 263. In this case, the trial court heavily weighed this factor against Aljamailawi. The trial court did not err in doing so. See *id*.

Finally, although prejudice is presumed in this case, it is a rebuttable presumption. The trial court found:

> defendant relies on investigation notes from the prosecutor regarding prisoners who were present in a common-area when the incident occurred. See Exhibit D to Defendant's Supplemental Brief. The notes list fourteen individuals believed to have been in the common-area at the time of the incident. The notes further provide that two witnesses recall the event. Records reveal that another inmate was at a different facility at the time. An additional inmate indicated he was never at the facility where the incident occurred, while another stated he was not in the dayroom at the time. Two other inmates have since been paroled and they did not respond to attempted contact. One of the prisoners has been deported to Mexico and another was killed by a gunshot wound in November 2016. Three inmates denied having knowledge of the stabbing. Another inmate stated he did not remember the incident and would not say anything even he did. A final inmate stated he had seen so many stabbings that he was unable to recall this specific incident.
>
> Although there is evidence that witnesses who may have observed the incident are no longer available (due to death and deportation), there is no evidence that the prospective witnesses saw the event and/or would testify favorably for defendant. Even if defendant was granted some weight as to this prong, it is but one of four factors the Court must consider. As discussed above, the remaining three factors weigh significantly against defendant. As such, any minor weight that might be counted in defendant's favor is insufficient to tip the scale in his favor regarding a speedy trial violation.

Thus, although the court erroneously concluded that prejudice was not presumed, it also concluded that any prejudice was minimal given the evidence before the court. On appeal, Aljamailawi does not challenge the court's finding that any prejudice was minimal. Nor do we conclude that the trial court clearly erred by finding a lack of substantial prejudice arising from the delay.

In sum, although the first and fourth factors minimally favor Aljamailawi's claim, they are outweighed in this case by the reasons for the delay and his significant delay in demanding a speedy trial.

## III. PREARREST DELAY

### A. STANDARD OF REVIEW

Aljamailawi next argues that his right to due process was violated because the delay of his "arrest" led to a delay in bringing Aljamailawi to trial, which prejudiced his defense because potential witnesses were lost. Prearrest delay is a constitutional issue, which is reviewed de novo. *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999).

### B. ANALYSIS

There is no due process violation simply because there is a delay between the time an offense is committed and a defendant is arrested. *People v Patton*, 285 Mich App 229, 236; 775 NW2d 610 (2009). Instead, the question "is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process." *Id*. (quotation marks and citation omitted). For a prearrest delay to constitute a due process violation, a defendant's right to a fair trial must be actually and substantially prejudiced, and the prosecution must have intended "to gain a tactical advantage." *Id*. at 237 (quotation marks and citation omitted). Substantial prejudice requires that a defendant's ability to defend himself against the charges is meaningfully impaired "in such a manner that the outcome of the proceedings was likely affected." *Id*. "[A]ctual and substantial prejudice requires more than generalized allegations." *Id*. (quotation marks and citation omitted). If a defendant establishes that his defense was prejudiced, then the prosecution must "persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *Id*.

Aljamailawi claims that his defense was prejudiced because potential witnesses may have forgotten what happened during the almost six-month delay between the incident and his first arraignment, and the 29-month delay between the incident and his trial. Aljamailawi asserts that "[a]bsent the long delay in prosecuting this case, [potential] witnesses would have had fresher memories and may have provided testimony either exonerating [d]efendant from the alleged crimes," or supporting his claim of self-defense. These "generalized allegations" are insufficient to establish actual and substantial prejudice. See *id*. Aljamailawi failed to name a single witness who would have been able to testify in his defense if the trial occurred sooner. Thus, he has failed to demonstrate actual and substantial prejudice resulting from his "prearrest" delay, and, accordingly, his due process claim fails.

## IV. ADMISSION OF EVIDENCE

### A. STANDARD OF REVIEW

Finally, Aljamailawi argues that a nurse's testimony regarding a prison injury commonly known as a "buck fifty" was inadmissible on relevancy grounds because a buck fifty injury was not at issue in this case. A trial court's decision to admit evidence is reviewed for abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "A trial court abuses its

discretion when its decision falls outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

The victim testified at Aljamailawi's trial, but was uncooperative and did not provide any pertinent testimony. A corrections officer testified that victims who are prisoners often do not want to testify because they are afraid of being labeled a "snitch." He explained that being "labeled a snitch in prison puts you in serious danger." Such a label "follows you wherever you go," even if you are transferred to a different prison. Later, the prosecution asked a nurse who evaluated Aljamailawi for injuries following the incident to define "a buck fifty":

> *Q*. And in regards to your experience at the prison now it's almost six, seven years.
>
> *A*. Correct.
>
> *Q*. Have you come across people with injuries?
>
> *A*. Yes.
>
> *Q*. And is there something known as a buck fifty?
>
> *A*. Yes.
>
> *Q*. What is that?
>
> *A*. That is when someone gets cut from their mouth all the way up to the ear.
>
> *Q*. And what does that mean or reference?
>
> *A*. The reference is a buck fifty [because] it takes a hundred and fifty stitches to suture up the area from the mouth to the ear.

Aljamailawi's' lawyer objected, noting that this case does not involve a situation where a prisoner was cut from his mouth to his ear. The prosecution responded that the testimony was "relevant because it goes to the rationale behind what a buck fifty is[,] [and how it] is related to people who are considered snitches." The court overruled the objection, but noted that the prosecution needed to lay a better foundation for the testimony. The prosecution then asked the nurse:

> *Q*. . . . what is the reason [ ] people receive a buck fifty?
>
> *A*. Typically, it's when [they] snitch or tell on somebody else [because it] is a way of retaliation against that person for telling.
>
> *Q*. And you're aware of this because they tell you that's the reason why [they] received the injury?

*A*. Correct.

*Q*. So, is it common practice not to, if you know, for people not to tell on other people?

*A*. More often than not. Yes.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. As Aljamailawi acknowledges on appeal, he argued at trial that the victim's refusal to testify against him "was evidence of [the victim's] culpability," which Aljamailawi used to bolster his self-defense argument. The prosecution's argument regarding the victim's refusal to testify against Aljamailawi was that the victim, like many prisoners, feared the consequences of snitching. The nurse's testimony about an injury known as a buck fifty was illustrative of why a prisoner may refuse to testify against his attacker. Her testimony was not offered to prove that the injury the victim suffered was actually a buck-fifty injury. The buck-fifty testimony was, thus, relevant to the issue of why the victim refused to testify cooperatively at trial, and the court did not abuse its discretion when it ruled that the testimony was admissible.

Affirmed.

/s/ Michael J. Kelly
/s/ Patrick M. Meter
/s/ Colleen A. O'Brien